ORIGINAL

1   SEDGWICK, DETERT, MORAN & ARNOLD LLP
    BRUCE D. CELEBREZZE  Bar No. 102181
2   ROBERT BERG  Bar No. 99319
    One Market Plaza
3   Steuart Tower, 8th Floor
    San Francisco, California 94105
4   Telephone: (415) 781-7900
    Facsimile: (415) 781-2635
5
    Attorneys for Defendant
6   WESTCHESTER SURPLUS LINES
    INSURANCE COMPANY
7

8

9                   UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

12  JSA HOSPITALITY GROUP, INC., a        CASE NO. '08 CV 0797 JM BLM
    California corporation,
13                                         NOTICE OF REMOVAL OF CIVIL ACTION
             Plaintiff,                    TO THE UNITED STATES DISTRICT
14                                         COURT FOR THE SOUTHERN DISTRICT
         v.                                OF CALIFORNIA
15
    WESTCHESTER SURPLUS LINES             [ORIGINALLY SAN DIEGO COUNTY
16  INSURANCE CO., and DOES I through     SUPERIOR COURT CASE NO. 37-2008-
    200, inclusive,                       00080003-CU-IC-CTL]
17
             Defendants.
18

19  TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN

20  DISTRICT OF CALIFORNIA AND TO THE CLERK OF THAT COURT:

21         PLEASE TAKE NOTICE that defendant Westchester Surplus Lines Insurance Company

22  ("Westchester") hereby removes the above described action from the Superior Court of the State

23  of California, County of San Diego, to the United States District Court for the Southern District

24  of California, pursuant to the provisions of 28 U.S.C. § 1441, and respectfully alleges as follows:

25         1.      Jurisdiction of this action is found within 28 U.S.C. §§ 1332 and 1441(a) as the

26  matter in controversy exceeds the $75,000, exclusive of interest and costs, and is between

27  citizens of different states.

28         2.      On or about March 8, 2008, plaintiff JSA Hospitality Group, Inc. filed a

                                        -1-

SEDGWICK
DETERT, MORAN & ARNOLDLLP

SF/1506243v1

FILED

2008 MAY -1 PM 2: 14

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KNK_____DEPUTY

FAXED

1  complaint in the Superior Court of California, County of San Diego, bearing Case No. 37-2008-

2  00080003-CU-IC-CTL, and naming as the defendants Westchester Surplus Lines Insurance

3  Company and Does 1 through 200, inclusive, which purports to allege causes of action for breach

4  of contract, breach of the covenant of good faith and fair dealing, unfair business practices,

5  negligent interference with prospective economic relations, and declaratory relief.

6    3.    Westchester first received copies of the summons and complaint by personal

7  service on April 4, 2008.  True and correct copies of plaintiff's summons, complaint, civil case

8  cover sheet, and notice of case assignment are attached hereto as Exhibit A.

9    4.    Westchester has filed an answer to the complaint.  A true and correct copy of the

10  answer is attached hereto as Exhibit B.  No proceedings have been held in the San Diego County

11  Superior Court.

12    5.    This action is a civil action over which this court has original jurisdiction under

13  28 U.S.C. § 1332, and is one which may be removed to this court by Westchester pursuant to the

14  provisions of 28 U.S.C. § 1441(a), in that the matter in controversy exceeds the sum of $75,000,

15  exclusive of interest and costs, and is between citizens of different states.  Specifically, in

16  paragraph 67 of the complaint, plaintiff alleges damages in excess of $5,000,000.

17    6.    There is a diversity of citizenship between the plaintiff and defendant:

18      a.    As set forth in paragraph 1 of the complaint, plaintiff JSA Hospitality

19  Group, Inc. is a California corporation, with its principal place of business in San Diego,

20  California.

21      b.    Defendant Westchester Surplus Lines Insurance Company is an insurance

22  company duly incorporated under the laws of Georgia, with its principal place of business in

23  Roswell, Georgia.

24    7.    As alleged in the complaint, plaintiff's complaints exceed the sum core value of

25  $75,000, exclusive of interest and costs.

26    WHEREFORE, defendant Westchester Surplus Lines Insurance Company gives notice

27  that the above entitled action, now pending against it in Superior Court for the County of San

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-2-

NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

1    Diego, State of California, has been removed therefrom to this court on grounds of diversity of

2    citizenship.

3    DATED: May 1, 2008           SEDGWICK, DETERT, MORAN & ARNOLD LLP

4

5

6                              By: _____

7                                  Bruce D. Celebrezze
                                     Robert Berg

8                                  Attorneys for Defendant
                                 WESTCHESTER SURPLUS LINES
                                 INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-3-

NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

**Exhibit A**

03/14/2008                          DLSUSA/DIVERSIFIED                                    PAGE1

1   Peter C. Ward, Esq.          SBN 126459
    Christopher H. Hagen, Esq.   SBN 179529
2   Ralph W. Peters, Esq.        SBN 126948

FILED
CIVIL BUSINESS OFFICE 16
CENTRAL DIVISION

08 MAR 14 PM 3: 35

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

3   WARD & HAGEN, LLP
    440 Stevens Avenue, Suite 350
4   Solana Beach, California 92075
    Telephone:    (858) 847-0505
5   Facsimile:    (858) 847-0105

6
7   *Attorneys for PLAINTIFF*
    *JSA HOSPITALITY GROUP, INC.*

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF SAN DIEGO – CENTRAL DIVISION

10  JSA HOSPITALITY GROUP, INC. a California
    corporation                          CASE NO.   37-2008-00080003-CU-IC-CTL
11              Plaintiff,
                                          COMPLAINT FOR:        FILE BY FAX
12
13              v.                        1.  BREACH OF WRITTEN CONTRACT

14  WESTCHESTER SURPLUS LINES             2.  BREACH OF THE IMPLIED
    INSURANCE CO., and DOES 1 through 200,    COVENANT OF GOOD FAITH AND
15  inclusive,                                FAIR DEALING

16              Defendants.               3.  UNFAIR BUSINESS PRACTICES
                                              UNDER B & P SECTION 17200
17
                                          4.  NEGLIGENT INTERFERENCE WITH
18                                            PROSPECTIVE ECONOMIC
                                              RELATIONS
19
                                          5.  DECLATORY RELIEF
20
                                          Courtroom: __
21                                        Hon. _____

22                                        DEMAND FOR JURY TRIAL

23      Plaintiff, JSA HOSPITALITY GROUP, INC. hereby alleges as follows:

24                                  <u>PARTIES</u>

25      1.    Plaintiff JSA HOSPITALITY GROUP, INC. ("Plaintiff"), at all times herein

26  mentioned, is and was a corporation lawfully incorporated and doing business in the State of California

27  and generally involved in the development and management of hotel and motel properties in Southern

28  California, with its main office in the County of San Diego, State of California.

                                        1
                                   *COMPLAINT*

 COPY

2.    HOEHNE/PATEL, INC., is, and was at all times herein mentioned, a California corporation generally performing as a general contractor, with its main office in Hesperia, County of San Bernardino, State of California (hereinafter referred to as "HOEHNE/PATEL").

3.    Plaintiff is informed and believes that WESTCHESTER SURPLUS LINE INSURANCE COMPANY ("WESTCHESTER"), at all times herein mentioned, was the issuer of the insurance policy more fully referenced hereinafter and defined as the "Policy" and either issued and delivered policies of insurance to residents of the State of California through a licensed surplus lines broker pursuant to Insurance Code section 1760, or was admitted to do business as an insurer under the laws of the State of California, and was registered as an Eligible Surplus Line Supplier and acted through its employees, its agents, or its assigns to offer and sell insurance in the State of California. Hereinafter, any reference to WESTCHESTER shall include, even if not mentioned, its agents and assigns.

4.    Plaintiff is informed and believes that THE MAHONEY GROUP – KINGMAN ("MAHONEY"), acted as the selling broker of the Policy for WESTCHESTER, and at all times herein mentioned, is and was a corporation duly organized and existing under the laws of the State of Arizona and authorized to sell surplus lines insurance in the State of California as a wholesale, retail or intermediate agent and/or broker, and based upon information and belief, maintains its principal place of business in Mohave County, Arizona.

5.    Plaintiff is informed and believes that GAB-Robins North America, ("GAB") was, and at all times herein mentioned is, a privately held company doing business under the protection of the laws of the State of California, and operating as a independent insurance adjustment company for hire by insurance companies and large self-insured entities, including WESTCHESTER, and by so doing, are and were at all times relevant to allegations herein, acting as agents, with full authority of their principal, WESTCHESTER.

6.    Plaintiff is informed and believes that Hosp, Gilbert, Bergsten & Phillips ("HOSP"), are and were acting as coverage counsel and general counsel for WESTCHESTER in connection with the fire loss claim, discussed below, and in so doing, are and were acting as agents, with full authority of their principal, WESTCHESTER.

1    7.    Plaintiff is informed and believes, and thereon alleges, that WESTCHESTER, HOSP,

2    MAHONEY and GAB are persons, corporations or other entities which reside or are authorized to do

3    and are doing business in the State of California as insurers, brokers, agents, attorneys or claims

4    adjusters. They are the managerial agents, employees, predecessors, successors, joint venturers, co-

5    conspirators, alter-ego, and/or representatives of each other and/or one or more of the other

6    Defendants named herein or identified as DOES, and acted with the permission, authorization and/or

7    ratification and consent of the other Defendants, and each of them.

8    8.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 – 100 are persons,

9    corporations or other entities which reside or are authorized to do and are doing business in the State

10    of California and at relevant times were agents, employees, predecessors, successors, joint venturers,

11    co-conspirators, alter-ego, and/or representatives of one or more of the other Defendants named herein

12    or identified as DOES, and acted with the permission, authorization and/or ratification and consent of

13    other Defendants.  Plaintiff is informed and believes, and thereon alleges, that 101 – 200 are persons,

14    corporations or other entities, which reside, or are authorized to do, and are doing business in the State

15    of California.  The true identities of DOES 1 - 200 are currently unknown to Plaintiff, and Plaintiff,

16    therefore, prays for leave to amend this Complaint to assert the proper names of each business when

17    its identity is discovered.

18    9.    Plaintiff is informed and believes, and thereon alleges, that each fictitiously named

19    Defendant is in some way responsible for, participated in or contributed to the matters of which

20    Plaintiff complains, and has legal responsibility for those matters.

21    **VENUE AND JURISDICTION**

22    10.    This Court has personal jurisdiction over Defendant, WESTCHESTER as it is, and was

23    at all relevant times hereinafter mentioned, actively engaged in the business of selling and/or the

24    placement of insurance in the State of California and pursuant to contract terms in the subject Policy,

25    Defendant WESTCHESTER has voluntarily agreed to submit to the jurisdiction of this court. See,

26    Policy, Exhibit "A", Bates No. JSA 0035.

27    11.    The claims asserted by Plaintiff well exceed the jurisdictional minimum of this court,

28    and are in excess of $3,000,000.

12.    Venue is proper because WESTCHESTER has contractually agreed to submit to the jurisdiction of this court. The Policy issued by WESTCHESTER states that WESTCHESTER "will submit to the jurisdiction of any court of competent jurisdiction." See, Policy, Exhibit "A", Bates No. JSA 0035. Pursuant to the express terms of the Policy prepared and issued by WESTCHESTER, said Defendant has agreed to submit to the "jurisdiction of any court" and has thereby voluntarily waived any challenge to jurisdiction or venue of the court selected by Plaintiff. This action is brought in the County where Plaintiff has its principal office, where Defendant WESTCHESTER does business and the County where the insurance contract was breached and damages were sustained by Plaintiff.

## THE POLICY

13.    WESTCHESTER, and DOES 1 – 200, made, executed and delivered Policy No. 120666602 001 ("Policy"), with effective dates of April 21, 2006 to April 21, 2007 in exchange for, and in consideration of, Policy premiums paid to it. Said policy purports to be a first-party, builders risk XTRA policy, providing coverage for direct physical loss to covered property for covered losses.

14.    Plaintiff is informed and believes, and thereon alleges, at all material times, WESTCHESTER, and DOES 1 – 200, provided MAHONEY with actual and/or ostensible authority, to issue insurance policies such as the subject policy. Pursuant to such authority, direction, permission, MAHONEY did issue the Policy.

15.    A true and correct copy of the Policy as it has been presented and represented to Plaintiff by WESTCHESTER, with common policy declarations, general provisions, premium schedule, signature page(s), endorsement pages, and other notices collectively is attached hereto as **Exhibit "A"** and incorporated herein by this reference as if set forth in full.

16.    The Policy provides coverage limits of $4,000,000 for all covered causes of loss in any one "Occurrence" occurring at the project located at 14717 Bear Valley Road, Hesperia, CA 92345 (Exhibit A, Bates No. JSA 001); $25,000 for Debris Removal (Exhibit A, Bates No. JSA 001); $25,000 for Fire Department Service Charges (Exhibit A, Bates No. JSA 001); and $25,000 for sidewalks, curbs, gutters, streets or parking lots (Exhibit A, Bates No. JSA 001).

17.    The Policy further states, under the heading "COVERED PROPERTY," that "[It] will cover the Insured Project(s) described in the Declarations while in the course of construction,

4
*COMPLAINT*

1  reconstruction, or renovation provided a Limit of Insurance is shown in the Declarations." (Exhibit A,
2  Bates No. JSA 013.)

3      18.    The Policy further states, under the heading "3. COVERED CAUSES OF LOSS," the
4  following:  "Covered Causes of *Loss* means risk of direct physical *loss* or damage to Covered
5  Property, except those causes of *loss* listed in the Exclusions." (Exhibit A, Bates No. JSA 014 [italics
6  in original].)

7      19.    Various other covered losses (Coverage Extensions), such as debris removal and fire
8  department service charges, are set forth in the policy as well. (Exhibit A, Bates No. JSA 014-017.)

9      20.    Exclusions are set forth in the policy, and include certain causes of loss, such as Earth
10  Movement, Flood, Nuclear Hazard, Governmental Action, War and Military Action, Wear and Tear,
11  and Criminal Acts (Exhibit A, Bates No. JSA 017-020).  Fire, and loss resulting from such, is
12  nowhere indicated as an excluded risk.

13      21.    Under Section E, "Additional Conditions . . . 1. Valuation – How We Settle a *loss*", the
14  Policy states the following:  "If the damaged or destroyed property is new construction, we will pay
15  the actual cost of repairing, replacing, or rebuilding the property with materials or similar kind and
16  quality." (Exhibit A, Bates No. JSA 0021.)

17                THE FIRE, THE LOSS AND CLAIMS PROCESS

18      22.    At all relevant times during 2006 and 2007, Plaintiff was in the process of developing a
19  new hotel in Hesperia, California, located at 14717 Bear Valley Road, Hesperia, CA ("Project").  In
20  early 2006, Plaintiff entered into a contract with HOEHNE/PATEL whereby HOEHNE/PATEL
21  would act as general contractor for the construction of the Project.  HOEHNE/PATEL began
22  construction of the project in 2006 and by October of 2006 had substantially completed its
23  construction operations.

24      23.    On or about October 20, 2006, there was a fire of unknown origins that totally
25  consumed and completely destroyed the Project ("the Fire Loss").

26      24.    Plaintiff promptly informed WESTCHESTER and its agents of the Fire Loss, and
27  submitted the claim and proof of loss for the Fire Loss in a timely manner (the "Fire Loss Claim").

28      25.    The Fire Loss and damages of Plaintiff occurred during the effective periods of the

1    insurance Policy issued by Defendants WESTCHESTER, and DOES 1 – 200.

2    26.    WESTCHESTER, and their agents, received Notice of the Fire Loss Claim, and had

3    open access to the fire site, and the books, records, and documents of the Plaintiff and

4    HOEHNE/PATEL.

5    27.    On or before March 28, 2007, the Plaintiff provided to WESTCHESTER, through its

6    claims representative, a detailed proof of loss packet with extensive backup material to support the

7    Fire Loss Claim.

8    28.    WESTCHESTER did not respond to the proof of loss, either by acceptance or denial,

9    in whole or in part, within the forty days after the submission of the proof of loss. Plaintiff reasonably

10    expected that it would receive an acceptance of the submitted claim pursuant to time frames

11    prescribed by Section 2695.7 of the California Insurance Commissioner's Fair Claims Settlement

12    Practices Regulations.

13    29.    After this 40 day period had expired, WESTCHESTER's agents did respond, by

14    sending a letter dated June 1, 2007, asking that Plaintiff provide certain additional information.

15    Plaintiff promptly responded to the issues raised in this letter and never received any follow up

16    indicating that there was anything more needed by WESTCHESTER or that any questions remained

17    unanswered or that there was otherwise any reason why the claim could not be paid.

18    30.    As a result of WESTCHESTER's failure to pay all or any part of Plaintiff's Fire Loss

19    Claim, Plaintiff was forced to, and did in fact, retain legal counsel. Plaintiff's attorney wrote

20    WESTCHESTER, and/or its agents, and set a deadline of June 14, 2007, for WESTCHESTER's

21    representative to report back to him on finalizing the details of getting the claim resolved and settled

22    or at least getting a partial advance of $2 million on the Fire Loss without further delay. Defendant

23    failed to respond to this letter in any way.

24    31.    Because of the lack of any response by WESTCHESTER and its failure to settle and

25    pay the claim, Plaintiff, through its legal counsel, wrote an August 23, 2007, letter to HOSP,

26    WESTCHESTER's counsel and representative, and therefore, agent, in an effort to spur compliance

27    on the part of WESTCHESTER, and get a response to the request for the $2 million advance and full

28    payment of policy benefits without further delay. At the time of this writing, it was over two months

1  past the previously established deadline and WESTCHESTER had not yet provided any advance

2  payment whatsoever, nor had it provided any explanation for this delay. The August 23, 2007 letter

3  from Plaintiff's counsel to WESTCHESTER's attorney and agent, included the following:

4
5              Based on my review of the file, it does not appear that the carrier provided a
              written denial of the claim within the 40-day period after March 28, 2007. The clear
6              implication from this being that the carrier has acknowledged the occurrence of a
              covered loss within the policy period and has waived any basis for denying benefits to
7              the insured. If you have any different information, then please so advise immediately
              and provide me with a copy of any written communication to the insured in which the
8              carrier denies, limits or otherwise does anything, other than accept this claim.

9      Defendant WESTCHESTER failed to respond to this specific portion of the August 23, 2007

10  letter quoted above, and has never provided any documentation or information to contradict the stated

11  fact that the carrier failed to ever provide a written denial of the claim within 40 days after the

12  submission of the proof of loss and the resulting conclusion that such failure acted as a waiver of any

13  basis for denying benefits to the insured.

14      32.    Additionally, the August 23, 2007 letter from Plaintiff's counsel to WESTCHESTER's

15  attorney and agent also included the following:

16              Based on my review of the file, it does not appear that carrier has at any time -
17              in the approximately 10 months since this loss occurred - ever provided the insured
              with a written denial of the claim in which it outlines "all bases for such rejection or
18              denial and the factual and legal bases for each reason" and the "specific statute,
              applicable law or policy provision, condition or exclusion" relied upon to deny or limit
19              coverage. If you have any different information, then please so advise immediately and
              provide me with a copy of any written communication that would support your position
20              on this issue.

21      Defendant WESTCHESTER failed to respond to this specific portion of the August 23, 2007

22  letter quoted above, and has never provided any documentation or information to contradict the stated

23  fact that the carrier failed to ever provide a written denial of the claim within 40 days after the

24  submission of the proof of loss in which it stated all bases for a rejection or denial with reference to

25  the specific statute, law, policy provision, condition or exclusion relied on and the resulting

26  conclusion that such failure acted as a waiver of any basis for denying benefits to the insured.

27      33.    Additionally, the August 23, 2007 letter from Plaintiff counsel also included the

28  following:

1
2
3
4
5
6
7
8

> Based on my review of the file, it does not appear that at any time within the 40-day period after March 28, 2007, that the carrier ever provided the insured with a written request for more or different information to supplement the proof of loss packet already provided; it does not appear that the carrier provided written notices updating the insured on the progress of the investigation on successive 30-day intervals; nor has the carrier ever provided a notice advising the insured/claimant as to when the file would be closed and the claim paid. After this 40 day period had expired, the insurer's consultants did send a letter dated June 1, asking for some specific information.
> It is my understanding that the insured responded to all issues raised in this letter and never received any follow up indicating that there was anything more needed from them or any question left unanswered. If you have any different information, then please so advise immediately and provide me with a copy of any written communication to the insured that would support your position on this issue.

9
10
11
12
13
14

Defendant WESTCHESTER failed to respond to this specific portion of the August 23, 2007 letter quoted above, and has never provided any documentation or information to contradict the stated fact that the carrier failed to ever request more or different information to supplement the proof of loss within 40 days after the submission of the proof of loss and the stated fact that the carrier had failed to provide written status updates on 30-day intervals and the resulting conclusion that such failure acted as a waiver of any basis for denying benefits to the insured.

15
16
17
18
19

34.    As of August of 2007, nearly a year had passed since the date of loss and WESTCHESTER's conscious disregard for the interests of its insureds had already caused significant harm to Plaintiff and each additional day of delay compounded the problem and increased the damages significantly. Defendant had actual knowledge of these damages and the fact that they were increasing.

20
21

35.    At no time has WESTCHESTER had any factual or legal justification for withholding payment of policy benefits to the insured Plaintiff.

22
23
24
25

36.    In August of 2007, WESTCHESTER had had nearly ten months to perform its investigation. In all this time, there had never been any mention by WESTCHESTER of any questions, concerns or reservations, about the legitimacy of the Fire Loss Claim or the factual support for the amount claimed.

26
27
28

37.    Plaintiff's counsel wrote another letter to WESTCHESTER's attorney and agent at HOSP on August 28, 2007, again demanding a response and compliance with the policy and WESTCHESTER's obligations. The letter stated in relevant part:

I wrote to you on August 23rd regarding the referenced claim, and the urgent need for action on the part of you and your client Westchester. I placed a follow up call to your office on August 24th and after being told that you were not available, I left a voicemail message again emphasizing the need for some urgent action on this claim. I have not heard back from you in response to my letter or my phone call, and am writing once again to request that you and your client, Westchester, make this matter your highest priority and act immediately to advance funds to my client.

• • •

Once again, you and your client are asked to please:

1. "Immediately" make an advance payment of $2 million; If the carrier refuses to do this, then please provide a specific explanation for why it has taken this position;

2. Confirm final numbers on the submitted claim and tender a full and final payment within seven (7) days; and

3. Respond to my August 23, 2007, letter and provide answers to the questions therein as quickly as possible, but by no later than the end of this week.

38.    Defendants failed to make an immediate advance of $2 million as requested in Plaintiff's letter of August 28, 2007 and failed to explain its failure to do so. Defendant failed to confirm final numbers for Plaintiff's Fire Loss Claim and did not explain its failure to do so. Defendant failed to provide answers to questions posed in letter of August 23, 2007.

39.    On or about September 5, 2007, Defendant agreed to issue to Plaintiff checks totaling $1,796,286.53. In doing so, Defendant failed to provide any explanation regarding the method by which this amount had been calculated, and failed to reference any policy terms or legal authorities which would support or justify the amount of this tender.

40.    On September 27, 2007, Plaintiff's counsel demanded appraisal pursuant to the Policy. Under the policy terms and conditions, Defendant is required to identify its appraiser within 20 days. Defendant failed to designate an appraiser within this time frame and failed to ever provide an excuse or explanation for its failure to do so.

41.    At WESTCHESTER's insistence, on September 28, 2007 an Examination Under Oath ("EUO") was taken of Jeff Hoehne, a principal with HOEHNE/PATEL, and RMO for that concern.

///

9
COMPLAINT

1 | Plaintiff allowed the EUO to proceed as a further sign of their continuing good faith cooperation with
2 | WESTCHESTER.

3 | 42. On October 2, 2007, Plaintiff's counsel again wrote to WESTCHESTER's attorney and
4 | agent at HOSP, informing them that that the Fire Loss at the Project would exceed the $4,000,000,
5 | coverage limit in the subject Policy. This letter referenced and enclosed a firm bid from a licensed
6 | General Contractor experienced in building hotels which established that the reconstruction costs for
7 | the Project would exceed $5 million.

8 | 43. On October 26, 2007, more than a year after the Fire Loss occurred at the project,
9 | Plaintiff's counsel again wrote HOSP, seeking a response to Plaintiff's Fire Loss Claim and a full and
10 | final settlement offer on the subject Fire Loss Claim, which had been shown to WESTCHESTER to
11 | exceed the limits on the Policy. This letter included the following:

> I remain at a loss to understand why the carrier is delaying payment
> and resolution of this claim. The insured has provided you with all of the information
> in its possession and has been completely forthcoming with whatever information has
> been requested. To the extent that there are less than complete records and
> documentation on the hotel project, this is not something that the insured has any
> control over at this point. Nor is it something that justifies the delays that have
> occurred to date. I have made repeated requests for payment or a clear statement of
> why it is that payment has not been made, and what information the carrier might still
> need so that I can respond; but I have
> received no response from you.
>
> I have been trying to work with you to resolve this matter without need for the
> filing of a lawsuit, but if you and the carrier refuse to resolve this claim and refuse to
> ever commit to a position, you really back me into a corner and leave me no option. It
> is simply not a viable alternative for my client to sit idly by and hope that some day the
> carrier might wake up to its responsibilities and do the right thing.
>
> Please respond within one week with a dollar offer representing the carrier's
> position on what it believes to be a fair and reasonable benefits payment to its insured.
> If you cannot provide a number within in [sic] this time, then please within the week
> provide a written explanation of what it is that is causing the delay, and what work
> and/or information still remains incomplete, so that we can understand what is causing
> this impasse and respond as appropriate.

26 | 44. Defendant failed to respond within the deadlines stated in the letter of October 26,
27 | 2007.
28 | ///

45.    WESTCHESTER, and its agents GAB and HOSP, failed during this time to fulfill its obligations to conduct a prompt, full and complete investigation of the fire claim, and communicate with its insured on a timely manner regarding the status of Plaintiff's Claim. WESTCHESTER failed to promptly respond to Plaintiff's inquiries, and failed to provide a meaningful estimate of the Fire Loss, any estimate of reconstruction costs, or any documentary support to explain either their inaction or their non-payment of benefits due under the Policy.

46.    As a result of the delay by WESTCHESTER, and its agents and assigns, Plaintiff was compelled to incur costs related to its legal representation, investigative costs, as well as attorneys' fees, expert fees and other expenses.

47.    On or about December 14, 2007, WESTCHESTER, through their agent HOSP, provided Plaintiff with an additional payment in the amount of $557,842.01. In response to the query by Plaintiff's counsel as to how this sum was established and calculated, HOSP, and on information and belief, GAB, both WESTCHESTER's agents, applied a measure of loss calculation which they labeled "Actual Cash Value" or "ACV" but which apparently was based upon the out of pocket costs incurred by Plaintiff in the original construction operations on the Project.

48.    In response to Defendant's insufficient claim settlement offer, and the inadequate explanation for the basis upon which the offer had been calculated, Plaintiff's counsel wrote a January 24, 2008 letter to WESTCHESTER's attorney and agent at HOSP and asked for further explanation and clarification of how they had calculated loss payable amount. This January 24, 2008 letter to HOSP included the following language:

> I am writing as a follow up to our prior communications regarding the valuation of benefits due to my client as an insured under referenced loss. In your letter of December 12, 2007, you state that the amount tendered is based on what the carrier and its consultant have determined to be the Actual Cash Value (ACV) of the property lost in the fire. While I am generally familiar with the terminology used in your letter regarding Actual Cash Value (ACV) and Replacement Cost Value (RCV), I don't see how these concepts have any relevance or application to this claim.
>     The term "Actual Cash Value" is referenced in the policy at one location. However, its relevance is limited in application to property loss claims involving damage to property which is "in the process of renovation." As the carrier and your office are well aware, the structure at issue in this claim was new construction of a Hampton Inn and could not, under any conceivable scenario, be characterized as a "renovation."

///

To further clarify and confirm that the ACV definition in this policy has no application to this loss, there is another, separate section in the policy which contains a provision which is clearly intended to address and govern the method of "valuation" under the type of loss at issue here. Significantly, the valuation method is NOT based on "ACV" or "RCV" but instead is given as follows:

> "If the damaged or destroyed property is new construction, we will pay the actual cost of repairing, replacing, or rebuilding the property with materials of similar kind and quality."[Emphasis in original; Footnote omitted.]

Based on the plain language of the policy, the ACV-RCV method of valuing a loss has absolutely no application to this pending claim and your attempts to limit benefits to the insured based on ACV provisions in the policy is inappropriate.

49.     The January 24, 2008 letter from Plaintiff's counsel to Defendant's counsel at HOSP also contained the following language:

> While I think it is clear that the ACV definition does not have any application to this loss, I should note that even if it were used as a reference, the definition you have used to calculate ACV is unsupported by the actual language of your client's policy. Your letter makes the assertion that "the primary basis used for determining the actual cash value is the amount actually expended by the insureds with respect to the construction..." and you further assert that this amount will be used by the carrier to establish "the upper limit of the Actual Cash Value for this loss." However, you do not support your position on this methodology with reference to any policy provisions or legal authority. Presumably, this is because the policy does not have any language which would lend credence to your position. To the contrary, "Actual cash value" is in fact a defined term in the policy and is given a meaning which is entirely inconsistent with your position. Actual cash value is defined in the policy to mean:

> "the present-day value of property measured in cash, arrived at by taking the replacement cost at the time of loss and deducting for depreciation brought about by physical wear and tear and obsolescence where applicable." [Footnote omitted.]

> Since this project was new construction which had not yet been occupied or used for even a day, there would be no argument for even a penny of "depreciation" related to "physical wear and tear and obsolescence..." Thus, even if we were to utilize the policy definition for ACV as you have argued, the result would be to give us a method of calculating the loss based on "present-day" construction costs to rebuild the hotel and NOT based on past expenditures and historical data as the carrier has chosen to do. [All caps in original.]

50.     Within the 30-days following the January 24, 2008 letter from Plaintiff's counsel, Defendants failed to respond to the request in said letter for an explanation of the exact basis for the loss payable amount calculated and tendered by Defendants and for an explanation as to why Defendants were not using the method of valuation as stated in the policy but were instead using a methodology which did not have any apparent connection to the policy terms and conditions.

51.    The January 24, 2008 letter from Plaintiff's counsel to Defendant's counsel at HOSP also contained the following language:

> Your letter also states that the insured would not be precluded from pursuing additional policy benefits to which it might be entitled "for Replacement Cost Value benefits under the policy." You go on to note however, that "with respect to Replacement Cost Value claims, [the insured] must proceed in accordance with the terms and conditions of the policy and be actually incurred in order to be considered for a Replacement Cost Value claim."

> Once again, your position lacks any support from the actual terms in the policy. I have reviewed the policy in some detail, and do not see any place where the term "Replacement Cost Value" is ever used. As a result, I request that you please explain and cite for me the "terms and conditions of the policy" that you are referring to in your letter with respect to RCV.

52.    Within the 30-days following the January 24, 2008 letter from Plaintiff's counsel, Defendants failed to respond to the request in said letter asking for an explanation as to the basis for the attempted application of an RCV condition or payment and Defendants failed to provide any reference or citation to a position of the Policy that would support the use of an RCV analysis.

53.    The application by HOSP and GAB of an ACV calculation method is contrary to express Policy terms for calculating damages in covered new construction claims. WESTCHESTER, and its agents and assigns presumably know the terms of its own Policy; therefore, it can only be deduced that WESTCHESTER intentionally, knowingly and deliberately misrepresented the nature of the benefits available to its insured.

54.    WESTCHESTER, and DOES 1 – 200, have failed to re-adjust the loss using the correct method of loss calculation, and by so doing, have denied coverage and wrongfully withheld policy benefits to Plaintiff with respect to the property damage suffered by Plaintiff.

55.    To date, WESTCHESTER, and DOES 1 – 200, have denied repeated requests by Plaintiff and its agent that WESTCHESTER, and DOES 1 – 200, act in accordance with their policy terms and conditions, while WESTCHESTER, and DOES 1 – 200, continue to fail to acknowledge their coverage obligations to their insureds with respect to the Fire Loss Claim.

56.    Commencing from the date of the tender of the subject Fire Loss Claim, WESTCHESTER, and DOES 1 – 200, were required to investigate the subject Fire Loss pursuant to the terms and conditions of the Policy at issue. In addition, WESTCHESTER, and DOES 1 – 200,

1    had the legal obligation to meaningfully evaluate each tender of claim and proof of loss of the subject

2    Fire Loss Claim and communicate in good faith and honestly with Plaintiff regarding the investigation

3    and evaluation of the tender of Fire Loss Claim.

4        57.    At time of placement of the Builder's Risk insurance contract ("Policy"), as referred to

5    hereinabove, WESTCHESTER, and DOES 1 – 200, became obligated to pay Plaintiff's covered

6    property damage losses.

7        58.    Plaintiff did in fact make a claim and provided evidence to WESTCHESTER in the

8    form of a proof of loss, that property damage, in the form of a devastating Fire Loss had occurred,

9    which was in turn acknowledged by WESTCHESTER, and its agents.

10        59.    The Fire Loss Claim of Plaintiff occurred during the effective period of the Policy

11    issued by Defendants WESTCHESTER, and DOES 1 – 200.

## FIRST CAUSE OF ACTION

### Breach of Written Contract

(Against WESTCHESTER and DOES 1 – 200)

15        60.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation

16    contained in all preceding and subsequent paragraphs of this Complaint as though set forth at this

17    point.

18        61.    As set forth above, under Builder's Risk policy 120666602 001, WESTCHESTER, and

19    DOES 1 – 200, among other things, agreed to investigate, adjust and settle covered claims tendered by

20    Plaintiff on account of property damage caused by an occurrence, falling within or potentially falling

21    within the coverage of, or as defined in, the Policy referenced herein. Pursuant to this insurance

22    Policy, WESTCHESTER, and DOES 1 – 200, also had a duty to conduct a reasonable, adequate and

23    diligent investigation of any claims tendered by Plaintiff and upon doing so to promptly pay the claim

24    pursuant to the Policy terms.

25        62.    WESTCHESTER, and DOES 1 – 200, did issue the insurance Policy as attributed to

26    them hereinabove. Said Policy does in fact cover losses caused by Fire Loss, thereby making the Fire

27    Loss Claim tendered by Plaintiff a covered loss.

28    ///

63.    WESTCHESTER has denied and continues to deny full policy benefits to Plaintiff without reasonable cause and in material breach of its duties and obligations under the terms of the Policy. In doing so, WESTCHESTER knew or should have known that such failure to provide full Policy benefits under the terms of the Policy was wrongful and incorrect and a material breach of the contractual duties assumed by it under term and conditions of the Policy. Further, WESTCHESTER and its agents have deliberately ignored information available to them and information provided by Plaintiff and its agents, which information clearly demonstrated that the method of loss adjustment they were employing was wrong and in violation and contravention of its obligations under the contractual terms and conditions in the Policy.

64.    All premium owed and due under the Policy was paid to Defendants and Plaintiff has otherwise performed all conditions, covenants and promises required to be performed, in accordance with the terms and conditions of the Policy, except to the extent that Plaintiff was prevented by WESTCHESTER, and DOES 1 – 200, or excused from such performance, or said conditions, covenants and promises have occurred and been fully satisfied or have been waived.

65.    As a result of the ongoing failure of WESTCHESTER, and its agents to provide them with full Policy benefits, Plaintiff has been forced to file this lawsuit and forced to incur loss adjustment and investigative costs, including attorneys' fees and costs, experts' fees and costs, court costs and other expenses, because of property damage caused by an occurrence falling within the coverage of the subject Policy, referred to hereinabove.

66.    WESTCHESTER'S denial of claims and refusal to provide coverage for Plaintiff, and refusal of WESTCHESTER, and DOES 1 – 200, to timely respond and agree to properly provide Policy benefits, including providing policy benefits pursuant to the proper method of loss adjustment constitutes material breaches of the terms and conditions of the Policy at issue.

67.    As a direct and proximate result of the breaches by WESTCHESTER, and DOES 1 – 200, of their respective duties, Plaintiff, in addition to being obligated to hire counsel to assert their rights to obtain full benefits under the Policy, have incurred damages including but not limited to loss of the Project – namely a hotel structure valued in excess of $5,000,000 – loss of hotel operating income; expenses related to  experts' fees and costs; expenses in debris removal, clean-up and

1   demolition costs; loan costs and fees; repair, loss adjustment, mitigation, investigation costs; loss of
2   business opportunity and economic advantage; past and future economic loss and lost profits; loss of
3   franchise rights; loss of pre-paid permit fee amounts, other expired fees and inspection costs and fees;
4   and other foreseeable damages, costs and expenses incurred as a direct and proximate result of the
5   breaches of WESTCHESTER, its agents and assigns, and are in an amount presently unknown, but in
6   excess of the jurisdictional minimums of this court, according to proof.

7          68.    The damages incurred above, without limitation, were proximately caused by said
8   breaches, and such damages and harm to Plaintiff was likely to arise in the ordinary course of events
9   from WESTCHESTER's breaches, and such damages and harm to Plaintiff was reasonably
10  foreseeable by WESTCHESTER as a likely and probable result of the breaches.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

(Against WESTCHESTER and DOES 1 – 200)

14         69.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation
15  contained in all preceding and subsequent paragraphs of this Complaint as though set forth at this
16  point.

17         70.    WESTCHESTER, and DOES 1 – 200, at all material times, had an implied obligation of
18  good faith and fair dealing in that WESTCHESTER, its agents and assigns, could undertake no action
19  that would do anything to injure the right of Plaintiff to receive the benefits the Policy;
20  WESTCHESTER further had the duty to act fairly and in good faith to Plaintiff in carrying out their
21  responsibilities under the subject Policy of insurance.

22         71.    Pursuant to the Policy, WESTCHESTER, and DOES 1 – 200, have express and implicit
23  obligations to act fairly and in good faith to Plaintiff, to promptly and reasonably investigate claims
24  submitted by Plaintiff, to communicate promptly and fairly with Plaintiff and to make reasonable,
25  prompt and correct coverage decisions and proper and accurate loss adjustment decisions following
26  submittal of property loss claim and of proof of loss.  The Policy identified herein is subject to an
27  implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to
28  obtain the full benefits of the insurance contract.  WESTCHESTER, and DOES 1 – 200, have breached

1  the implied covenant of good faith and fair dealing when unreasonably failing to pay Plaintiff full

2  benefits pursuant to the terms of the Policy, apply the proper loss adjustment formula, communicate

3  timely, reasonably, and fairly with Plaintiff concerning the subject Claim, and/or to provide a prompt

4  and reasonable settlement offer owed under the Policy within a reasonable time following the

5  submission of the proof of loss to WESTCHESTER, its agents and assigns, and have continued in

6  breach at all material times thereafter, notwithstanding ongoing requests for payment, clarification of

7  Policy terms, and a proper loss adjustment by Plaintiff and its agents to WESTCHESTER, its agents

8  and assigns, and DOES 1 – 200.

9      72.    Plaintiff is further informed and believes, and thereon alleges, that WESTCHESTER,

10  and DOES 1 – 200, breached their respective obligations to act fairly and in good faith towards

11  Plaintiff by committing, among other things, the following acts and omissions:

12          a.    Refusing to conduct a reasonable investigation and diligently pursue the facts

13              underlying the Fire Loss claim; ignoring information provided by Plaintiff's

14              representatives to WESTCHESTER, directly or through its agents which would

15              establish coverage; and unreasonably and knowingly continuing to withhold

16              monetary benefits due under the Policy based on this inadequate and

17              incomplete investigation.

18          b.    Unreasonably and unjustifiably failing to attempt in good faith to reach a

19              prompt, fair and equitable settlement of Plaintiff's claim, when the value of the

20              losses had become reasonably clear, in order to discourage Plaintiff and others

21              similarly situated from pursuing their full policy benefits.

22          c.    Adopting an unreasonable and unwarranted narrow interpretation and application

23              of provisions and exclusions in the Policy contrary to the Policy terms and facts

24              presented them by Plaintiff's representatives and agents, and thereby making an

25              unreasonably low adjustment of the claim, in a manner calculated to deny benefits

26              due Plaintiff under the Policy, all to the detriment of Plaintiff's interests.

27          d.    Deliberately, unjustifiably and unreasonably estimating the losses claimed by

28              Plaintiff at substantially and significantly less than the amounts actually due and

---

17

*COMPLAINT*

1  owing, and otherwise engaging in a pattern and practice of making "lowball"

2  offers in an attempt to convince insureds to settle for less than the full value of

3  their claims.

4  e.    Unreasonably refusing to fully and/or adequately provide Policy information,

5  and instructions, to Plaintiff, within a reasonable time after receipt of notice of

6  the Fire Loss Claim by Plaintiff.

7  f.    Despite having drafted, marketed and sold the Policy in question, and collected

8  full premium thereon, and retained as adjustment personnel the purportedly

9  professional GAB concern, WESTCHESTER nevertheless unreasonably,

10  purposefully and intentionally interpreted the Fire Loss Claim and Policy terms

11  concerning the Fire Loss Claim at the Project in an improper and inaccurate

12  manner incorporating an incorrect measure of loss and using an incorrect

13  adjustment method whereby the insured was not allowed full replacement and

14  reconstruction cost but rather a lesser amount based on Defendant's narrow and

15  restrictive calculation of amounts spent on the original construction of the

16  structures lost in the fire contrary to express policy terms and solely in an attempt

17  to avoid coverage obligations owed to its insureds.

18  g.    Persisting in seeking information not reasonably required or material to the

19  resolution of the Fire Loss Claim.

20  h.    Refusing to timely, promptly, and within an appropriate time, pay for the reasonable

21  and necessary loss amount incurred by Plaintiff in connection with the Fire Loss

22  Claim following the tender of proof of loss through the present, and failing to

23  request an extension to do so, and at no time making a prompt, fair and reasonable

24  settlement offer to Plaintiff.

25  i.    Refusing to meaningfully and reasonably communicate with Plaintiff and to

26  provide Plaintiff with any reasonable or justifiable basis for the decision to deny

27  and/or delay payment of full policy benefits.

28  j.    Deliberately and unreasonably concealing their methodology from the Plaintiff for

1      adjusting claims so as to keep Plaintiff unaware of the insurance carrier's unfair

2      practices.

3    k.    Deliberately and unjustifiably failing to adopt and implement reasonable standards

4      for the prompt processing of Plaintiff's claims with the design and intention that

5      Plaintiff would be unable to pursue their full policy benefits or would become

6      frustrated with pursuing their full policy benefits and would accept a lower

7      settlement than that to which it is entitled.

8    l.    Deliberately and unreasonably failing to affirm or deny coverage of claims after

9      Plaintiff completed and submitted a proof of loss so as to try to coerce Plaintiff

10     into accepting a lowball settlement offer.

11   m.    On information and belief, embarking on a course of conduct and a pattern and

12     practice, whereby WESTCHESTER, and DOES 1 – 200, would refuse to

13     respond fully to claims and/or proofs of loss made by or on behalf of its other

14     insureds and/or to acknowledge the coverage and loss adjustment obligations

15     owed to Plaintiff or on behalf of its other insureds, all to the financial detriment

16     of Plaintiff and WESTCHESTER's other insureds.

17   n.    Information and belief, and as part of the pattern and practice of

18     WESTCHESTER, and DOES 1 – 200, they have consistently refused to

19     investigate and engage in proper loss adjustment methodology with other

20     WESTCHESTER policyholders in fire loss cases on a regular basis without

21     reasonable basis, and have wrongfully and purposefully, and in conscious

22     disregard of the insureds' rights, refused to pay full policy benefits when it had

23     a known obligation to do so.

24   o.    Continuing to pursue such course of conduct and pattern and practice after

25     notification of, and notwithstanding the requirements set forth under California

26     law and regulations, mandating proper loss adjustment procedures and policies

27     with respect to first party losses and claims.

28   p.    Unreasonably, purposefully and intentionally interpreting the allegations and

1             Fire Loss Claim presented by the insured Plaintiff inaccurately and erroneously

2             solely in an attempt to avoid obligations owed to Plaintiff.

3      q.     Knowingly causing the Plaintiff to sustain economic and financial harm,

4             including, but not limited to, business loss, attorneys' fees and costs by refusing to

5             pay the Plaintiff full Policy benefits in a timely manner.

6      r.     Deliberately, unjustifiably an unreasonably compelling Plaintiff to institute

7             litigation to recover amounts due under their insurance policies in an effort to

8             further discourage Plaintiff from pursuing their full policy benefits.

9      s.     Pursuing such a course of conduct and pattern and practice in violation of the

10             terms of the Policy and California law with the knowledge, understanding,

11             consent and approval of the respective managing officers, directors, agents and

12             employees of WESTCHESTER, and DOES 1 – 200.

13      t.     Failing to notify and inform Plaintiff of its right and obligations under the Policy.

14      u.     Improperly advising Plaintiff that participation in an appraisal is a "condition

15             precedent" to filing a civil complaint when in fact no such condition or

16             requirement exists in the policy.

17      73.     The foregoing acts and omissions were part of a pattern of conduct as to Plaintiff, and

18 were unreasonable, malicious, fraudulent, oppressive and despicable as they were done with deliberate

19 intent, foreknowledge of the consequences of their actions, and following repeated attempts by

20 representatives of Plaintiff to inform and educate WESTCHESTER of the wrongfulness of their

21 actions in denying full coverage, improperly adjusting the Fire Loss Claim, and therefore wrongfully

22 and unreasonably denying benefits of the Policy.

23      74.     The respective agents, assigns, officers, directors and managing agents and employees

24 of WESTCHESTER, and DOES 1 – 200, knowingly participated in, authorized and/or ratified the

25 wrongful conduct of WESTCHESTER, and DOES 1 – 200, as alleged above and refused to reconsider

26 their coverage position after being provided with information conclusively establishing a more

27 beneficial adjustment formula due Plaintiff, and continued to wrongfully deny full policy benefits to

28 Plaintiff, in keeping with their pattern of accepting premium for insureds and then denying insureds

1  the full benefits of their Policy.

2      75.    As a result of the bad faith conduct of WESTCHESTER, and DOES 1 – 200, in this

3  matter, Plaintiff has been required to bring this Complaint to enforce its rights under the insurance

4  Policy as mentioned herein.   Plaintiff are, therefore, entitled to recover as damages against

5  WESTCHESTER, and DOES 1 – 200, all of its fees, costs and expenses, incurred as a result of

6  WESTCHESTER's wrongful acts, together with interest thereon.

7      76.    The above-described conduct of WESTCHESTER, and DOES 1 – 200, has been and

8  continues to be unreasonable, intentional, capricious and arbitrary, and constitutes a breach the

9  covenant of good faith and fair dealing contained in the insurance Policy referred to above in this

10  Complaint. Further, WESTCHESTER has deliberately ignored information provided by Plaintiff and

11  its agents it demonstrating that its loss adjustment methodology argument was wrong, and has instead,

12  in bad faith and without proper cause denied payment of full policy benefits due under Plaintiff' Fire

13  Loss Claim.

14      77.    As a proximate result of the aforementioned conduct by Defendants, and each of them,

15  Plaintiff has suffered, and will continue to suffer in the future damages plus interest, in an amount to

16  be shown at the time of trial.

17      78.    The above-described conduct of WESTCHESTER and Does 1-200 constitutes malicious,

18  oppressive and despicable conduct and conscious disregard of Plaintiff' rights, and stems from

19  improper and evil motives, an intent to cause injury to Plaintiff, and done with a willful and conscious

20  disregard for the rights of its insured.  WESTCHESTER further acted in a despicable manner and in a

21  conscious disregard for the rights of its insureds, having full knowledge of the effect of its

22  determination on Plaintiff.  These acts continued even after Plaintiff protested to WESTCHESTER, its

23  agents and assigns, and Plaintiff were powerless to obtain from WESTCHESTER compliance with

24  their obligations.  Defendants' desire to reduce or avoid their obligations to Plaintiff was intentional

25  and without cause or reason, all of which goes to justifies and compels an award of punitive and

26  exemplary damages.

27  ///

28  ///

21
***COMPLAINT***

### THIRD CAUSE OF ACTION

**Unfair Business Practices Under B&P Code Section 17200**

(Against all Defendants)

79.   Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding and subsequent paragraphs of this Complaint as though set forth at this point.

80.   On information and belief, WESTCHESTER has wrongfully applied coverages and/or improperly applied an incorrect and improper adjustment formula to other insureds over the very same issues that have resulted in this Complaint being filed. This case further establishes the intentional pattern of conduct employed by WESTCHESTER to sell Policy, collect premium, and then wrongfully adjust losses based on improper investigations and using improper claims-handling procedures and using improper means and methods to determine the amount of loss benefits to be paid by it.

81.   The acts of Defendants, and each of them, as set forth herein, constitute unlawful and unfair and/or fraudulent business practices pursuant to California Business and Professions Code Sections 17200, et seq. and 17500, et seq.   Additionally, said unlawful, unfair and/or fraudulent business practices by Defendants include, but are not limited to, the following:

a) Adjusting fire losses in an improper and misleading manner;

b) Failing to hire or retain competent and knowledgeable insurance adjusting personnel with knowledge and skills necessary to properly adjust fire losses;

c) Failing to take proper measures to safeguard the interests of its insureds upon becoming aware that incorrect policy interpretation and adjustment methods were being employed;

d) Engaging in false and misleading marketing and advertising regarding Defendants' insurance experience and supposedly high quality insurance products and personnel, and then selling insurance products to unknowledgeable purchasers who are then duped by WESTCHESTER and/or its agents, who fail to meet minimum insurance standards in service, policy interpretation, and adjustment accuracy;

///

1      e) Requiring insureds to participate in an appraisal as a precondition to acknowledging a claim

2  and paying benefits when no such requirement exists in its policy and improperly and wrongfully

3  advising insureds that they must participate in an appraisal as a condition precedent to filing a lawsuit

4  when in fact no such requirement exists in its policy;

5      f) Despite having become aware of its common errors in policy interpretation and adjustment

6  of loss(es), not only are other affected policy holders not informed of them, but the existence of such

7  conditions are denied by the insurance company personnel entrusted with setting these things right,

8  and their agents, when contacted by other policyholders within the same policy family;

9      g) Knowingly adjusting losses in response to policy holder requests which are inadequate,

10  which do not apply the right method or measure of damages for purposes of calculating loss, and not

11  authorizing adjustment and claims personnel to incur sufficient costs to properly evaluate and analyze

12  losses and their adjustment, and essentially performing a superficial analysis of reported claims

13  resulting in underpayment to policy holders.

14      82.    The acts, statements, nondisclosures, misrepresentations, false promises and/or

15  untruthful advertising and marketing of WESTCHESTER, its agents and assigns, and each of them, as

16  set forth herein, misled Plaintiff and were done in the course of Defendants' enterprise to: 1) induce

17  Plaintiff to execute insurance contracts; and 2) save monies which would have been spent with

18  application of proper adjustment methodology in fire losses.

19      83.    As a direct and proximate result of the aforementioned acts, WESTCHESTER, its

20  agents and assigns received and continue to retain and benefit from premium dollars realized from the

21  sale of the subject insurance Policy to Plaintiff, and others similarly situated, and continue to benefit

22  from the retention of funds which should be spent providing a proper amount of money for adjustment

23  of the fire loss at Plaintiff' insured property.

24      84.    Plaintiff is informed and believes and thereon alleges that the insureds of

25  WESTCHESTER have been denied coverage and or full policy benefits in similar situations and will

26  continue to be denied coverage and/or full policy benefits due to the unlawful claims and adjustment

27  practices of WESTCHESTER, its agents and assigns.

28  ///

85.    As a direct and proximate result of WESTCHESTER, its agents and assigns aforementioned wrongful acts, statements, nondisclosures, misfeasances's and/or deliberate acts which constitute unlawful, unfair, and fraudulent business practices.

86.    Defendants, and each of them, should be required to disgorge and make restitution of all their ill-gotten gains and ordered to disgorge all amounts collected and retained as part of the unlawful, deceptive and unfair claims practice.

## FOURTH CAUSE OF ACTION
### Negligent Interference with
### Prospective Economic Relations

(Against WESTCHESTER and DOES 1-200)

87.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation contained in all preceding and subsequent paragraphs of this Complaint as though set forth at this point.

88.    Prior to the time of the Fire Loss, Plaintiff had entered into contracts, agreements and economic relationships in anticipation of its planned development and operation of the Project as a hotel under a franchise license agreement. These contracts, agreements and economic relationships included but are not limited to, loan agreements with Desert Community Bank and a hotel franchise license agreement.

89.    Defendant WESTCHESTER knew, or should have known about, Plaintiff's existing and intended future contracts, agreements and economic relationships based on information available to it and communications with Plaintiff, and its representatives, after the date of the Fire Loss. Such information and communication includes, but is not limited to, a June 12, 2007 letter written to WESTCHESTER's agent and representatives at GAB.

90.    Defendant WESTCHESTER knew or should have known that Plaintiff's contracts, agreements, and economic relationships, including the referenced relationships with its bank and its hotel franchisor would be disrupted if Defendant WESTCHESTER failed to act with reasonable care in the investigation, adjustment and payment of policy benefits for the Fire Loss Claim.

91.    Defendant WESTCHESTER failed to act with reasonable care and otherwise breached its duties to Plaintiff as herein alleged and in so doing failed to provide Plaintiff with the policy

1  benefits to which it was legally entitled, or at the times that it was legally entitled to payment of such

2  benefits.

3       92.    As a direct and proximate result of Defendant's failure to act and other wrongful

4  conduct as alleged herein, Plaintiff's contracts, agreement and economic relationships were disrupted

5  and Plaintiff was harmed thereby.

6  **FIFTH CAUSE OF ACTION**

7  **Declaratory Relief**

8  (Against all Defendants)

9       93.    Plaintiff repeats, re-alleges and incorporates by this reference each and every allegation

10  contained in all preceding and subsequent paragraphs of this Complaint as though set forth at this

11  point.

12       94.    As set forth above, WESTCHESTER, and DOES 1 – 200, among other things, agreed

13  to investigate and adjust any claim submitted by Plaintiff on account of covered property damage

14  caused by an occurrence falling within and/or potentially falling within the coverage defined in the

15  subject Policy.

16       95.    As set forth above, WESTCHESTER, and DOES 1-200, owed a duty to Plaintiff to

17  provide an insurance Policy that afforded Plaintiff with Builder's Risk coverage for claims of property

18  damage resulting from covered risks during the effective dates of the Policy without any hidden

19  coverage limitations or exclusions.

20       96.    Plaintiff timely provided notice of a covered fire loss to WESTCHESTER, and DOES

21  1 – 200. Plaintiff has performed each covenant and/or condition which must be performed in order to

22  obtain Policy benefits under the Policy referenced hereinabove, or has been excused from so

23  performing as a result of the breach(es) by WESTCHESTER, and DOES 1 – 200, of the pertinent

24  insurance agreement, including refusals to fairly adjust and/or provide full policy benefits to Plaintiff

25  within a timely manner, despite efforts to educate and apprise WESTCHESTER of its responsibilities,

26  among other matters.

27       97.    A dispute has arisen between Plaintiff and Defendants, and each of them, in that,

28  Plaintiff contends that it was, and is entitled, to be fully made whole pursuant to a proper adjustment

25
*COMPLAINT*

1    methodology in connection with the Fire Loss Claim, and be afforded full Policy benefits under their

2    Builder's Risk Policy in an amount greater than payments tendered by Defendants to date.  Plaintiff is

3    informed and based upon conduct, believes, and thereon alleges, that Defendants unreasonably

4    contend otherwise.

5           98.    An actual controversy exists between Plaintiff and Defendants in that, Defendants

6    contend that the Policy issued by WESTCHESTER, and/or their agents, and DOES 1 – 200, does not

7    actually provide Plaintiff with full actual cost of repair or replacement cost of insured property for

8    covered fire loss claims, during the effective dates of the Policy. Plaintiff contends such coverage and

9    loss adjustment formula does exist, without any coverage limitations or exclusions, during the

10   effective dates of the Policy. Plaintiff is informed and believes, and thereupon alleges, that

11   Defendants, and each of them, unreasonably contend otherwise.

12          99.    An actual controversy exists between Plaintiff and Defendants regarding the duties of

13   each Defendant to provide coverage to Plaintiff and/or pay benefits to Plaintiff pursuant to the

14   insurance Policy arising out of the Fire Loss Claim presented by Plaintiff.  A declaratory judgment is

15   necessary and appropriate to determine the rights and duties of the parties.

16       *WHEREFORE*, Plaintiff prays for judgment as follows:

17                          1. **ON THE FIRST CAUSE OF ACTION**

18       a.     For actual, compensatory and consequential damages according to proof, but in an

19              amount within the jurisdiction of this Court;

20       b.     For attorney's fees and costs of suit in obtaining the benefits owed under the

21              respective Policy, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813,

22              according to proof;

23                          2. **ON THE SECOND CAUSE OF ACTION**

24       a.     For actual, compensatory and consequential damages according to proof, but in an

25              amount within the jurisdiction of this Court;

26       b.     For attorney's fees and costs of suit in obtaining the benefits owed under the

27              respective Policy, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813,

28              according to proof;

c.    For punitive and exemplary damages, according to proof;

### 3. ON THE THIRD CAUSE OF ACTION

a.    For an order requiring Defendants to disgorge and make restitution in amounts to be determined at trial;

b.    For creation of a common fund sufficient to satisfy the claim of Plaintiff and all similarly situated policy holders;

c.    For attorney's fees and costs of suit in obtaining the benefits owed under the respective Policy, pursuant to Statute;

d.    For an Injunctionary Relief as to Defendants, enjoining them from engaging in such activity in the future;

### 4. ON THE FOURTH CAUSE OF ACTION

a.    For actual, compensatory and consequential damages according to proof, but in an amount within the jurisdiction of this Court;

### 5. ON THE FIFTH CAUSE OF ACTION

a.    For declaratory judgment that each Defendant is obligated to provide full and complete Policy benefits to Plaintiff, and to fully compensate Plaintiff for its fire loss and any costs and expenses incurred in its efforts to secure full policy benefits;

b.    For a declaratory judgment that each Defendant must reimburse Plaintiff for the legal fees and costs incurred in this action;

### 6. ON ALL CAUSES OF ACTION

a.    For attorney's fees and costs of suit herein;

b.    For pre-judgment interest as allowed by law;

c.    For all such other and further relief as the Court may deem just and proper.

WARD & HAGEN, LLP.

Dated: March 14, 2008

By: _____
Peter C. Ward
Ralph W. Peters, Esq.
*Attorneys for Plaintiff*

27
**COMPLAINT**

# EXHIBIT "A"



Insurance Services, N...
10375 Richmond Ave, Suite 500, Houston, TX 77042
Phone: (713) 532-4111 Fax: (713) 532-4121



# CONFIRMATION OF COVERAGE BOUND
## (BINDER CONFIRMATION)

DATE:       May 01, 2006
ATTN:       Brad Rucker                    FAX:    (928) 757-4576
AGENCY:     Mahoney Group-Kingman          SUBMISSION#: 2502032
POLICY #:   IMCI20666432 001               BINDER CONFIRMATION EXP:  6/21/06

Dear Brad,

*We are pleased to confirm the following coverage that has been bound by the carrier shown below. Please note that this binder confirmation is based on the coverage, terms and conditions listed below, which may be different from those requested in your original submission. As you are the representative of the Insured, it is incumbent upon you to review the terms of this binder confirmation carefully with your Insured, and reconcile any differences from the terms requested in the original submission. CRC Insurance Services, Inc. disclaims any responsibility for your failure to reconcile with the Insured any differences between the terms confirmed below and those terms originally requested. THIS COVERAGE MAY NOT BE BOUND WITHOUT A FULLY EXECUTED BROKERAGE AGREEMENT.*

The terms of our binder confirmation are as follows:

| | |
|---|---|
| Insured Name: | Patel Hoehne, LLC |
| | Hoehne Constracting JSA Hospitality Group |
| | 11561 Cottonwood Ave, |
| | Hesperia, CA  92345 |
| | |
| Physical Address: | 14717 Bear Valley Road, |
| | Hesperia, CA 92345 |
| | |
| Operations: | Hotel (Builder's Risk) |
| | |
| Carrier: | Westchester Surplus Lines Insurance Company |
| | |
| Term: | 4/21/2006 to 4/21/2007 |
| | |
| Perils Covered: | Risks of direct physical loss or damage excluding Flood and Earth Movement |
| | |
| TIV: | $4,000,000 Breakdown as Follows: |
| | $4,000,000       Building - Per Occurrence |
| | |
| Limits | $4,000,000 All covered causes of loss in any one occurrence |
| | $4,000,000 Covered Property of Scheduled Location |
| | $100,000 Covered Property While in Transit |
| |   $100,000 Covered Property While at Temporary Locations |
| | |
| Sub-Limits | $25,000           Debris Removal |
| | $25,000           Pollutant Cleanup (Aggregate Limit) |
| | $25,000           Fire Department Service Charge |
| | $25,000           Valuable Papers and Records |
| | $250  Installed Trees & Shrubs Per Item |
| | $25,000           Installed Trees & Shrubs Per Occurrence |
| | $25,000           Sidewalks, Curbs, Gutters, Streets or Parking Lots |

*(handwritten: Clean Copy)*

JSA001

|                      |                                                                                      |
|----------------------|--------------------------------------------------------------------------------------|
| Deductible:          | $10,000                          Per Occurrence                                        |
| Valuation:           | Replacement Cost                                                                       |
| Co-Insurance:        | Nil - Final project completed value required within 30 days of policy expiration.     |

Terms & Conditions:   No Flat Cancellations;
30-Day Notice of Cancellation, except 10 days for nonpayment of premium;
Twenty-Five Percent (25%) Minimum Earned Premium;
Fees are fully earned;
Limits are specific per the Schedule of Values on file with the Company, NOT blanket;
This insurance is subject to the terms, conditions, limitations of the policy(ies) in current use by the Insurance Company and the endorsement(s) required by the Underwriter.
All policy exclusions including, but not limited to Pollution & Contamination, Asbestos, Electronic Data / Cyber Risk, Mold/Fungus, and Nuclear, Biological, and Chemical Exclusions.
If successful, we would issue the policy to include protective safeguard endorsement requiring (fully fenced with a 6 ft. cyclone fence, full lighting on site during nonworking hours). The insured will need to sign this endorsement and return to us within 30 days.

*Subject to signed and dated application (signed by the insured) within 30 days of binding. NOTE: If insured is located outside your resident state, we must receive a copy of your non-resident license prior to binding.*

Subject To:   Favorable Inspection;
Compliance with any Recommendations Deemed Essential by Company
Other endorsements/exclusions as required by Company standards.
Available on request.

| Premium:                      | $19,640.00  |
|-------------------------------|-------------|
| TRIA Status:                  | REJECTED    |
| Broker Fee                    | $650.00     |
| Inspection Fee - Company      | $300.00     |
| State Tax:                    | $617.70     |
| Stamping Fee:                 | $36.03      |
| Grand Total:                  | $21,243.73  |

Again, keep in mind that the coverages confirmed bound may differ from that requested in the application. Failure to provide the requested coverage shall impose no liability on CRC Insurance Services or its companies.

Thank you for giving us the opportunity to work on your business.

Confirmed By:  Dane West                    Fax:        (713) 532-4122
               May 0: 2006

CONFIDENTIAL

JSA002

**THE MAHONEY GROUP - KINGMAN**
1740 Beverly Avenue, #A
Kingman, AZ 86401-3500
Phone : 928-757-7788   Fax : 928-757-4575

| INVOICE# | 256185 | |
| --- | --- | --- |
| ПОEHN-1 | 14 | 05/03/06 |
| IMC120666431 001 | | |
| Westchester Surplus Lines | | |
| R. Brad Rucker | | |
| 04/21/06 | 04/21/07 | 05/03/06 |

Patel Hoehne, Inc.
Jeff Hoehne
11561 Cottonwood Ave.
Hesperia, CA  92345

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 99PQ5F | 04/21/06 | NEW | BR-I | Corrected BR | | $ | 19,640.00 |
| 99PQ5G | 04/21/06 | CFE | BR-I | Broker Fee | | $ | 650.00 |
| 99PQ5H | 04/21/06 | CFE | BR-I | Insp Fee | | $ | 300.00 |
| 99PQ5J | 04/21/06 | CFE | BR-I | SLT to CRC | | $ | 617.70 |
| 99PQ5K | 04/21/06 | CFE | BR-I | SLF to CRC | | $ | 36.03 |
| | | | | Invoice Balance: | | $ | 21,243.73 |

JSA003

10/20/2006   15:37   7827363672            MAHONEY-LV                    PAGE   01/35

## Inland Marine
## Builder's Risk XTRA
## Declarations

Westchester Surplus Lines Insurance Company



SYM: IMC       Policy ID: 120666602 001

Named Insured & Mailing Address

Patel Hoehne, LLC, et al
11561 Cottonwood Avenue
Hesperia CA 92345

Producer's Name & Address

CRC INSURANCE SERVICES INC
10375 RICHMOND AVE
SUITE 500
HOUSTON TX 77042
48445W-NEW

| **General Policy Information** | |
|---|---|
| The Named Insured Is: | Corporation |
| Policy Period: | 12 months |
| When Coverage Begins: | 04/21/2006   12:01 A.M. Standard Time at Named Insured's Address |
| When Coverage Ends: | 04/21/2007   12:01 A.M. Standard Time at Named Insured's Address |

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**I. Description of Insured Project**

The Insured Project Is:  Construction of Wood Frame Hotel

**II. Limits of Insurance**

The most we will pay for all loss resulting from all covered causes of loss in any one Occurrence is $4,000,000.

If a separate sublimit is listed for A. through D. below, the most we will pay in any one occurrence is the Sublimit of Insurance shown below. These sublimits are part of, and not in addition to the Limit of Insurance shown above.

**A. New Projects:**

| Location(s) | Value at the Completion Date | Sublimit of Insurance |
|---|---|---|
| 1417 Bear Valley Rd, Hesperia, CA  92345 | $ 4,000,000 | $ 4,000,000 |
|  | $ _____ | $ _____ |
|  | $ _____ | $ _____ |
|  | $ _____ | $ _____ |

**B. Renovation Projects:**

   1. Existing Structure(s)
      *Location(s)*

      Not Covered

$ _____
$ _____
$ _____
$ _____

   2. Improvements and Betterments
      *Location(s)*

      Not Covered

$ _____
$ _____
$ _____
$ _____

JSA004

10/20/2006  15:37   7327363672          MAHONEY-LV                    PAGE  02/35



SYM: IMC     Policy ID: I20666602 001

| II. Limits of Insurance (Continued) | | | |
|---|---|---|---|
| | C. Covered Property While in Transit | $ | 100,000 |
| | D. Covered Property While at Temporary Location(s) | $ | 100,000 |

**III. Sublimits for Extensions of Coverage**

If a separate sublimit or aggregate limit applies to an extension of coverage, the most we will pay in any one occurrence for loss covered by that extension of coverage, as described in the policy paragraph noted, is the sublimit of Insurance shown. These sublimits are part of, and not in addition to the Limit of Insurance shown in Section II, above.

| | | | |
|---|---|---|---|
| Debris Removal (Paragraph A.4.c. ) | | $ | 25,000 |
| Pollutant Cleanup (Paragraph A.4.d). | Aggregate Limit | $ | 25,000 |
| Fire Department Service Charges (Paragraph A.4.e) | | $ | 25,000 |
| Valuable Papers and Records (Paragraph A.4.f.) | | $ | 25,000 |
| Installed Trees and Shrubs (Paragraph A.4.g.) | | $ | 25,000 |
| Water Damage, Other Liquids, Powder or Molten Material Damage (Paragraph A.4.h.) | Maximum per item | $ | 250 Included in Policy Limit |
| Sidewalks, Curbs, Gutters, Streets or Parking Lots (Paragraph A.4.i.) | | $ | 25,000 |
| Expediting Expense (Paragraph A.4.j.) | | $ | 1,000 |

**IV. Deductibles**

| *For Causes of Losses Covered by this policy* | | *Deductible Amount* |
|---|---|---|
| Applicable to all physical loss or damage in any one occurrence. | $ | 10,000 |

**V. Loss Payee(s)**

| *Name and Address* | *Interest in Covered Property* |
|---|---|
| None | |
| | |
| | |
| | |

JSA005

10/20/2006  15:37  7027363672                    MAHONEY-LV                    PAGE  03/35



SYM: IMC     Policy ID: I20666602 002

**V.   Loss Payee(s)
(continued)**

_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____

**VI.   Reporting
Option**

☐ Yes          ☒ No

If "Yes" block is checked, one of the following reporting options will apply:

☐ Values at Risk Reporting Form Endorsement

☐ Completed Value Reporting Form Endorsement

☐ Other:

Reporting Frequency:          ☐ Annual
                              ☐ Semi-Annual
                              ☐ Quarterly
                              ☐ Monthly

Premium Deposit:                              $ _____

Reporting Rate:                       _____ per $100.

**VII.   Non-Reporting
Option**

☒ Yes          ☐ No

Non-Reporting Premium:                        $ _____19,640

**VIII.  Attached Forms**

These Declarations, the forms attached and all endorsements attached and issued on or after the effective date constitute the Policy.

**IX.  Countersignature
(if applicable)**

Countersigned At:

Date:

Authorized Agent:

JSA006

10/20/2006  15:37  7027363572          MAHONEY-LV                    PAGE  04/35

## *Forms Schedule*

**Company: Westchester Surplus Lines Insurance Company**
SYM:    IMC              Policy ID: I20566802 001

| Policy Period | When Coverage Begins: | 04/21/2006 | 12:01 A. M. Standard Time At Named Insured's Address |
|---|---|---|---|
|  | When Coverage Ends: | 04/21/2007 | 12:01 A. M. Standard Time At Named Insured's Address |

| Applicable to all Coverage Parts | <u>Form No. and Description</u><br>SLPD (04/03) - Policy Declarations<br>BB-5W58a (12/85) - Common Policy Declarations<br>LD-5823h (02/06) - Signature Endorsement<br>MA-609255 (08/04) - ACE Property & Casualty Claims Directory |
|---|---|
| **Commercial Inland Marine** | <u>Form No. and Description</u><br>BB-5W59 (12/04) - Inland Marine Builders Risk XTRA Declarations<br>BB-5W60b (10/05) - ACE Builders Risk XTRA Coverage Form<br>BB-5W64a (03/05) - ACE Inland Marine Policy Conditions<br>ACE0223 (03/05) - ACE Common Policy Conditions<br>ALL-10753 (10/01) - Electronic Data Amendment Endorsement<br>ACE0204 (01/02) - Additional Exclusion - Fungus, Wet Rot, Dry Rot and Bacteria<br>ALL-10780 (10/01) - Terrorism Exclusion Endorsement<br>TRIA16 (04/06) - Policyholder Disclosure Notice of Terrorism Insurance Coverage<br>BB-10220a (02/06) - Service of Suit Endorsement<br>CC-3R18 (07/87) - General Endorsement<br>CC-3R19 (07/87) - General Endorsement |

Form CP/s2 (05/02)
Page 1

JSA007

18/28/2006  15:37   7027363572           MAHONEY-LV                      PAGE  05/35

# SIGNATURE ENDORSEMENT

| Named Insured<br>Patel Hoehne, LLC, et al | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I20688802 001 | Policy Period<br>04/21/2008 to 04/21/2007 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

**ILLINOIS UNION INSURANCE COMPANY**
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**INA SURPLUS INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

GEORGE D. MULLIGAN, Secretary                    JOHN J. LUPICA, President

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
500 Colonial Center Parkway, Suite 200, Roswell, GA 30076

GEORGE D. MULLIGAN, Secretary                    DENNIS A. CROSBY, JR., President

_____
Authorized Agent

LD-8S23-  (2/06) Ptd. in U.S.A.

JSA008

10/20/2006  15:37   7027363672              MAHONEY-LV                 PAGE  06/35

# ACE
# Property & Casualty Claims Directory

Claims or Loss Notices related to this policy should be reported to the following:

| Claim Office | Location | Primary Fax Numbers |
|---|---|---|
| ACE Westchester Specialty Group | P.O. Box 100008 Roswell, GA 30077 | Fax:   678.795.4095<br>        888.763.7999<br>Back-up Fax:<br>        678.795.4081<br>        888.982.2333 |

Page 1 of
Form: MA-AC8255 (09/04)

JSA009

18/28/2008  15:37  7027263572        MAHONEY_LV                 PAGE  37/35

ACE USA

# Common Policy Declarations

Company Name: Westchester Surplus Lines Insurance Company
SYM: IMC        Policy ID: 120666602 001
Named Insured & Mailing Address

Patel Hoehne, LLC, et al
11561 Cottonwood Avenue
Hesperia  CA 92345

Producer's Name & Address

CRC INSURANCE SERVICES INC
10375 RICHMOND AVE
SUITE 580
HOUSTON TX 77042
43445W-NEW

| General Policy Information | | |
|---|---|---|
| Policy Period: | 12 months | |
| Business Description: | Owner | |
| When Coverage Begins: | 04/21/2006 | 12:01 A.M. Standard Time at Named Insured's Address |
| When Coverage Ends: | 04/21/2007 | 12:01 A.M. Standard Time at Named Insured's Address |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

The premium for this policy is indicated below next to the applicable Coverage Form(s).

| Coverage Form | Premium |
|---|---|
| Builders Risk Xtra | $  19,640 |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
| Total Premium: | $  19,640 |
| Minimum Earned Premium: | $  10,000 |

**Attached Forms Information**

See Forms Schedule CPfs2

**Authorization Information**

Countersigned At:

Date:

Authorized Agent:

| | | |
|---|---|---|
| Broker Fee: | $ | 650.00 |
| Inspection Fee: | $ | 300.00 |
| State Tax: | $ | 617.70 |
| Grand Total: | $21,207.70 | |

These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.

Page 1 of 1
Form 80-5S38A (12/95)

JSA0010

10/26/2006  15:37  7227363672                MAHONEY-_V                PAGE  06/35

## *Policy Declarations*



| Policy No.  120666802 001 | | Renewal of:  NEW |
|---|---|---|

**NAMED INSURED & MAILING ADDRESS**
Patel Hoehne, LLC, et al
11581 Cottonwood Avenue
Hesperia  CA 92345

**POLICY PERIOD**

| When Coverage Begins: | 04/21/2006 | 12:01 A. M. Standard Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | 04/21/2007 | 12:01 A. M. Standard Time At Named Insured's Address |

| **INSURING COMPANY** | **Producer's Name & Address:** |
|---|---|
| **Westchester Surplus Lines Insurance Company** | CRC INSURANCE SERVICES INC<br>10375 RICHMOND AVE<br>SUITE 500<br>HOUSTON  TX 77042<br><br>Producer No:  48446W |

See Form SL CA 2005 on the
following page

NO FLAT CANCELLATIONS PERMITTED

**ATTACHED FORMS**
This policy is completed by the following: BB-SW56 and forms and endorsements attached thereto.

**Authorization Information**
Countersigned by:

SLPD (4/03

JSA0011

# *Westchester Surplus Lines*

INSURANCE COMPANY

500 Colonial Center Parkway, Suite 200
Roswell, GA 30076

# NOTICE

POLICY NO.   I20686602 001

NAME OF INSURED:   Patel Hohne

ADDRESS:   11561 Cottonwood Ave Hesperia, CA 92345

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

The Surplus Lines Broker further confirms that this risk has been declined by three admitted carriers not including any insurer affiliated with the Surplus Lines Insurance Company.

Thank you for this placement and your regulatory compliance.

Dated: May 25, 2006

JSA0012



# ACE Builders Risk XTRA
# Coverage Form

### Coverage Information

Various provisions on this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words you and your refer to the Named Insured shown in the Declarations. The words we, us and our refer to the Company providing this insurance.

Words and phrases that appear in *italics* are specifically defined. Refer to Section F. DEFINITIONS in this Coverage Form for those definitions.

### A. Coverage

We will pay for direct physical *loss* to Covered Property from any Covered Cause of *Loss*.

1. COVERED PROPERTY

   We will cover the Insured Project(s) described in the Declarations while in the course of construction, reconstruction or renovation provided a Limit of Insurance is shown in the Declarations.

   Covered property includes:

   a. Property of every kind and description that you own or are liable for that is intended to become a permanent part of the building or structure described in the Declarations. This includes building excavations.

   b. If not covered by other insurance and if values are reported to us for premium calculation, *temporary structures* on site, including cribbing, scaffolding and construction forms.

   c. Property in transit that is intended to become a permanent part of the building or structure described in the Declarations, provided a separate Limit of Insurance is shown for such coverage in the Declarations.

2. PROPERTY NOT COVERED

   We will not cover the following property:

   a. land (including land on which the covered property is located) or water; or

Form BB-SW60E (10-2006)
Page 1 of 11

JSA0013



b.  the following property when installed outside of buildings:

   (1) Trees or shrubs, unless a limit of Insurance is shown in Section III of the
       Declarations;

   (2) Radio or television antennas, including their lead-in wiring, masts or towers; or

c.  property while airborne; or

d.  property while waterborne, unless in transit on Inland Waterways within the United
    States of America and Canada; or

e.  property while located underwater, except while in transit through tunnels; or

f.  machinery, tools or contractors' equipment not intended to become a permanent part of
    the building or structure described in the Declarations; or

g.  vehicles licensed for highway use; or

h.  property in storage which is not specifically designated for or identified with the
    location(s) described in the Declarations; or

i.  transmission and distribution lines, poles, towers and all equipment attached or affixed
    thereto, including supporting structures, transformers and appurtenant buildings.

j.  existing buildings at the project site, including those scheduled for renovation or
    reconstruction, unless value(s) for these buildings are reported to us and the buildings
    are listed in Section II.B.1. of the Declarations.

3.  **COVERED CAUSES OF LOSS**

    Covered Causes of *Loss* means risks of direct physical *loss* or damage to Covered Property,
    except those causes of *loss* listed in the Exclusions.

4.  **EXTENSIONS OF COVERAGE**

    Any amounts that we pay under the following Extensions of Coverage are included as part
    of the Limits of Insurance shown in the Declarations.

a.  Preservation of Property

    If it is necessary to move Covered Property from the described *premises* to preserve it
    from *loss* from a Covered Cause of Loss, we will pay for the cost of removal and any
    direct physical *loss* to that property:

   (1) While it is being moved or while temporarily stored at another location; but
   (2) Only if the *loss* occurs within 10 days after the property is first moved.

JSA0014



Payment under this Coverage Extension will not exceed the amount we would have paid if the Covered Property had not been removed.

b.  Collapse

The term Covered Cause of Loss includes *collapse* as described and limited in the Definitions section of this policy.

We will pay for the direct physical *loss* to covered property involving *collapse* of a building or structure or any part of a building or structure caused only by one or more of the following:

(1) any *specified cause of loss* or breakage of building glass, all only as insured against in this coverage part;

(2) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to *collapse*;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to *collapse*;

(4) weight of people or personal property;

(5) weight of rain, snow or ice that collects on a roof;

(6) use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

(7) faulty design, plans, specifications or workmanship, in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

But we will not pay the cost of making good or restoring property which is or was defective or faulty in design, plans, specifications or workmanship.

We will not pay for *loss* to:

outdoor radio or television antennas, including their lead-in wiring, masts, or towers; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces caused by items 2, 3, 4, 5, 6 and 7 under this section, entitled Collapse, unless the *loss* is a direct result of the *collapse* of a building.

*Collapse*, as used here, does not include settling, cracking, shrinking, bulging or expansion.

**Coverage for the following items (c. through j.) only applies if a limit of Insurance for the Extension of Coverage is shown in Section III of the Declarations.**

c.  Debris Removal Expense

(1) We will pay the expense you incur to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

JSA0015



(2) The most we will pay under this Coverage Extension is shown in section III of the Declaration Pages. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

    (a) The date of direct physical *loss*; or
    (b) The end of the policy period.

(3) This Coverage Extension does not apply to the cost to:

    (a) Extract *pollutants* from land, air, or water; or
    (b) Remove, restore or replace polluted land, air, or water.

(4) This Coverage Extension does not apply to Business Income, Loss of Rents, or Soft Costs coverage.

d.  Pollutant Clean Up

(1) We will pay up to the aggregate limit shown on the Declarations for expense you incur for clean-up of *pollutants* from land, air, or water at your *premises* during the term of this policy. The presence, release, discharge or dispersal of the *pollutants* must be caused by a covered cause of *loss* not otherwise excluded. The expenses must be reported to us within 180 days after the date of the direct physical *loss* or the expiration date of this policy, whichever comes first.

(2) This Coverage Extension does not apply to Business Income, Loss of Rents, or Soft Costs coverage.

e.  Fire Department Service Charge

When a fire department is called to save or protect covered property from a Covered Cause of Loss, we will pay up to the amount shown on the Declarations for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to *loss*; or
(2) Required by local ordinance.

f.  Valuable Papers and Records

If any of your valuable papers or records, such as blueprints, plans, drawings or data processing media are lost or damaged due to a Covered Cause of Loss, we will pay up to the limit shown for costs you incur to research, replace or restore those valuable papers or records.

g.  Installed Trees and Shrubs

We will pay for *loss* to installed trees and shrubs if they are damaged or destroyed by fire, lightning, explosion, riot or civil commotion, or an aircraft. The maximum amount

JSA0016



we will pay for any single item in any one *occurrence* is limited to the amount shown on the Declarations. The amount includes the cost of debris removal.

h.  *Water Damage*, Other Liquids, Powder or Molten Material Damage

If *loss* caused by or resulting from covered water or other liquid, powder or molten material damage *loss* occurs, we will pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which such substance escapes. However, we will not pay the cost to repair any defect to a system or appliance itself, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or
(2) Is directly caused by freezing.

i.  Sidewalks, Curbs, Gutters, Streets or Parking Lots

We will pay for *loss* to sidewalks, curbs, gutters, streets, parking lots or other paved surfaces. The amount we will pay is the amount shown on the Declarations or the amount included in the construction contract, whichever is less, including debris removal for all losses from any one *occurrence*.

j.  Expediting Expenses

If direct physical *loss* to covered property by a covered cause of *loss* occurs while this policy is in force, we will pay up to the amount shown in the Declarations, the reasonable extra costs to make temporary repairs, and to expedite the permanent repair or replacement of the insured property which is damaged by a covered cause of *loss*. The amount we will pay includes additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation.

**B. Exclusions**

1.  We will not pay for *loss* caused directly or indirectly by any of the causes of *loss* shown in this section. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But we will cover resulting fire or explosion arising out of any of these excluded causes except war.

a.  The enforcement of any ordinance or law:
(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.

b.  The failure of power or other utility service supplied to the covered location, however caused, if the failure occurs away from the covered location.

But if loss by a Covered Cause of Loss results, we will pay for that resulting *loss*

JSA0017

18/28/2888  15:37    7027363572    MAHONEY-LV    PAGE  15/36



   c.  *Earth Movement*, but if loss by fire, explosion, or volcanic action results, we will pay
      for that resulting *loss*.

      Volcanic action means direct *loss* resulting from the eruption of a volcano when the *loss*
      is caused by:

      (1) Airborne volcanic blast or airborne shock waves;
      (2) Ash, dust, or particulate matter; or
      (3) Lava flow.

      Volcanic action does not include the cost to remove ash, dust or particulate matter that
      does not cause direct physical *loss* to the described property.

      This exclusion will not apply to property in transit.

   d.  *Flood.*

      This exclusion will not apply to property in transit.

   e.  Governmental Action, meaning the seizure or destruction of property by order of
      governmental authority.

      But we will pay for acts of destruction ordered by governmental authority and taken at
      the time of a fire to prevent its spread, if the fire would be covered under this Coverage
      Part.

   f.  Nuclear Hazard, meaning nuclear reaction or radiation, or radioactive contamination,
      however caused.

      But if *loss* by fire results, we will pay for that resulting *loss*.

   g.  War and Military Action, meaning

      (1) War, including undeclared or civil war;
      (2) Warlike action by a military force, including action in hindering or defending
         against an actual or expected attack, by any government, sovereign or other
         authority using military personnel or other agents; or
      (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental
         authority in hindering or defending against any of these.

2.  We will not pay for *loss* caused by or resulting from any of the following, except as
    provided under A.4., Extensions of Coverage.

   a.  Delay, loss of use or loss of market, interruption of business or any consequential *loss* of
      any nature.

JSA0018



b.  Penalties for non-completion of, or delay in completion of, any contract or failure to comply with contract conditions.

c.  (1) Wear and tear;
    (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;
    (3) Settling, subsidence, cracking, shrinking, or expansion;
    (4) The following causes of *loss* to covered property:
        (a) Dampness or dryness of atmosphere;
        (b) Changes in or extremes of temperature;
        (c) Marring or scratching.
    (5) Insects, vermin, rodents and other animals.

    But if *loss* from *Specified Causes of Loss* or building glass breakage results, we will pay for that resulting *loss*.

d.  Water, or other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    (1) You use reasonable care to maintain heat in the building or structure; or
    (2) You drain the equipment and shut off the water supply if the heat is not maintained.

e.  Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose whether or not such persons are acting alone or in collusion with others, and whether or not such act occurs during the hours of employment.

    This exclusion does not apply to carriers for hire or acts of destruction by your employees; but does apply to *theft* by employees.

f.  Mysterious disappearance or unexplained *loss*.

g.  Shortage disclosed upon taking inventory.

h.  *Collapse*, except as provided for in Coverage Extensions. But if *loss* by a Covered Cause of Loss results in *collapse* at the location(s) described in the Declarations, we will pay for that resulting *loss*.

i.  Asbestos, including *loss*, damage, or clean-up caused by or resulting from asbestos or asbestos containing materials.

j.  The presence, release, discharge or dispersal of *pollutants* unless the presence, release, discharge or dispersal is itself caused by fire, lightning, windstorm or hail, explosion, riot or civil commotion, vehicles or aircraft, sonic boom, smoke, vandalism and malicious mischief, sprinkler leakage, *sinkhole collapse*, or volcanic action.

Form BB-BW605 (12-2005)
Page 7 of 11

JSA0019

12/28/2006 15:27    7027363672    MAHONEY-LV    PAGE 17/35



   k.  Rain, snow, ice or sleet, whether driven by wind or not, to Covered Property, unless located within a fully enclosed structure and then only for such *loss* that is caused by or results from rain, snow, ice or sleet entering through an opening caused by a Covered Cause of Loss not otherwise excluded.

3.  We will not pay for *loss* caused by or resulting from the following, except as provided under Coverage Extensions. But if *loss* from a Covered Cause of Loss results, we will pay for that resulting *loss*

   a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Section B.1. above to produce the *loss*.

   b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or government body.

   c.  Faulty, inadequate or defective:

     (1) Planning, zoning, development, surveying, siting;
     (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
     (3) Materials used in repair, construction, renovation, or remodeling; or
     (4) Maintenance;
        of part or all of any property on or off the described premises.

**C.  Deductible**

We will not pay for *loss* in any one *occurrence* until the amount of the adjusted *loss* exceeds the deductible shown in the Declarations and/or on any endorsements to this policy. We will then pay the amount of the adjusted *loss* in excess of the deductible, up to the applicable Limit of Insurance.

If more than one Property Damage deductible would apply to a single *occurrence* we will pay the amount of the adjusted *loss* in excess of the largest deductible, up to the applicable Limit of Insurance.

Deductibles for Business Income, Loss of Rents and Soft Costs Coverage always apply separately from any applicable Property Damage deductibles.

**D.  Limits of Insurance**

1.  The most we will pay for all *loss* in any one *occurrence* is the Limit of Insurance shown in Section II of the Declarations. Sublimit(s) and Aggregate Limit(s) of Insurance where shown in Sections II and III of the Declarations are part of and not in addition to the Limit of Insurance.

2.  The most we will pay for *loss* in any one *occurrence* for Extensions of Coverage is the Limit of Insurance applicable to the Coverage Extension.

JSA0020



**E.  Additional Conditions**

The following conditions apply in addition to the Common Policy and Inland Marine Conditions unless stated otherwise.

1.  Valuation - How We Settle a *loss*

   If the damaged or destroyed property is new construction, we will pay the actual cost of repairing, replacing, or rebuilding the property with materials of similar kind and quality.

   If the damaged or destroyed property is in the process of renovation, we will pay:

   a.  The *actual cash value* of the existing structure(s) if covered by this policy; and
   b.  The cost of labor and materials that have been added up to the time of *loss*.

   We will include an additional 15% of the amount(s) above or the percentage for contractor profits and overhead included in the total value of the job you furnish us in calculating your premium, whichever is less.  **This does not apply to determining the value of existing structures, if** covered.

2.  When Coverage Begins and Ends

   Coverage will begin on the date shown on the Builders Risk Declarations and will end on the earliest of the following:

   a.  When your financial interest in the property ends; or
   b.  When the purchaser accepts the property as complete; or
   c.  The date shown on the Declarations; or
   d.  The date the policy is canceled; or
   e.  The date you abandon the construction.

3.  Coinsurance Agreement

   No Coinsurance Agreement applies to this contract. However, you are required to submit the final project completed value to us within 30 days of the policy expiration date. If the final completed value varies by more than 5% from our limit of insurance, we will apply the appropriate additional or return premium. Additional and return premiums of less than $250 will be waived.

4.  Occupancy Clause

   You may occupy not more than 50% of the completed square footage of the Insured Project for the purpose(s) originally intended without our written consent. We may require additional premium if hazard is increased.  You may, however, install or store machinery and equipment.

**F.  Definitions**

JSA0021

10/28/2006  15:37    7027363672    MAHONEY-LV    PAGE  19/35



1.  *Actual cash value* means the present-day value of property measured in cash, arrived at by taking the replacement cost at the time of loss and deducting for depreciation brought about by physical wear and tear and obsolescence where applicable.

2.  Clean-up includes testing, monitoring, removal, containment, treatment, detoxification, or neutralization.

3.  With respect to buildings and structures, *collapse* means:

    a.  an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose;

    b.  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of *collapse;*

    c.  A part of a building or structure that is standing is not considered to be in a state of *collapse* even if it has separated from another part of the building or structure;

    d.  A building or structure that is standing is not considered to be in a state of *collapse* even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    The criteria set forth in 3.a. through 3.d. do not limit the coverage for *collapse* otherwise provided under this policy for the EXTENSIONS OF COVERAGE causes of loss listed in 4.b.1., 4.b.4. and 4.b.5.

4.  *Earth Movement* means earthquake, landslide, mudslide, mudflow, volcanic eruption, earth sinking (other than sinkhole collapse), rising, shifting, mine subsidence, or other earth movement.

5.  *Flood* means the overflow from a stream or any other body of water. *Flood* also means surface water, waves, tidal waves or movements or spray from any of these, whether driven by wind or not.

6.  *Loss* means accidental loss or damage.

7.  *Occurrence* shall mean all losses or damages that are attributable directly or indirectly to one cause, event, incident or repeated exposure to the same cause, event or incident, or to one series of similar causes, events, incidents or repeated exposures to the same cause, event, or incident first occurring in the policy period. All such losses and/or damages and the total amount of such losses and/or damages will be treated as one *occurrence* irrespective of the period of time or area over which such losses and/or damages occur, unless a specific period of time is otherwise set forth herein. The most we will pay for *loss* or damage in any one "*occurrence*" is the applicable Limit of Insurance shown in the Declarations.

Form BB-3W800 (10-2005)
Page 15 of 31

JSA0022

10/20/2006  15:37   7027363672         MAHONEY-LV                    PAGE  28/35



The foregoing definition applies to the word *"Occurrence"* whenever used in this policy, whether the word appears in quotations, italic, bold or normal print.

8.  *Pollutants* means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

9.  *Premises* means a plot of ground, a building or a portion of a building that you use to conduct your business activities. "Your *premises*" means the *premises* described by the addresses listed in Section II, Limits of Insurance in the Declarations.

10. *Temporary Structure* means office trailers, storage sheds, and property of a similar nature.

11. *Theft* means the unlawful taking of personal property or Covered Property without the owner's consent and includes pilferage, looting, larceny, burglary, and robbery.

12. *Sinkhole collapse* means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.

13. *Specified Causes of Loss* mean the following: Fire, lightning, explosion, windstorm or hail, smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; *sinkhole collapse*; volcanic action; falling objects; weight of snow, ice, or sleet; *water damage*.

14. *Water Damage* means accidental discharge or leakage of water or steam as the Direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

JSA0023



# ACE Inland Marine Policy Conditions

These are Conditions which apply to the entire policy, including any endorsements. However, endorsements can also change these Conditions, so be sure to check any endorsements you have.

**GENERAL CONDITIONS**

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
This entire policy is void if:
1. You have concealed or misrepresented any material fact(s) or circumstance(s) concerning this insurance, or
2. You make any attempt to defraud us either before or after a *loss*.

**B. CONFORMITY WITH LAW**
If any of the terms of this policy (and forms attached to it) conflict with the statutes of the state in which the policy is issued, the policy is amended to conform with such statutes.

**C. LEGAL ACTION AGAINST US**
You agree not to bring suit against us unless you have complied with all the terms of this policy. Any such suit must be brought within 24 months of the *loss*. However, the period of time for bringing suit may be changed by the laws of the state in which the Covered Property is located.

**D. NO BENEFIT TO BAILEE**
No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. COVERAGE TERRITORY**
We cover property wherever located within the United States or Canada, except that we do not cover property in transit by water or by air to and from Alaska or to and from Hawaii.

**F. RENEWAL**
We have the option, but not the obligation to renew or continue the policy from year to year. We will base the premium for each renewal on our rules and rates that are current at the time of renewal.

**G. SOLE AGENT**
If more than one person or organization is insured under this policy, the first one named in the Declarations will act on behalf of all others.

**H. CERTIFICATES OF INSURANCE**
Any Certificates of Insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance. This policy may only be modified by endorsement issued by the Company.

JSA0024

| | |
|---|---|
| **LOSS CONDITIONS** | **A. ABANDONMENT**<br>You cannot abandon property to us in order to claim a total *loss* |

**B. APPRAISAL**

If we cannot agree with you on the amount of *loss*, either of us can demand that the following procedure be used to settle the amount:

1. You or we will request in writing that the dispute be submitted to appraisal within 50 days from the time we receive the proof of *loss*. Each will then select an appraiser and notify the other of that choice within 20 days of the initial request.

2. The appraisers will select an impartial umpire. If they cannot agree on an umpire within 30 days, either you or we ask an umpire be appointed by a judge of the court of record in the county where the property is located.

3. The appraisers will appraise each item for its value at the time of *loss* and the amount of *loss*. If they cannot agree, they will submit any differences to the umpire. An agreement in writing by any two of these three will determine the amount of the *loss*.

4. You will pay your appraiser and we will pay ours. Each will share equally any other costs of the appraisal and the umpire.

Neither you nor we will surrender our rights by any act you or we take relating to an appraisal.

**C. DUTIES IN THE EVENT OF LOSS**

If there is a *loss* to your Covered Property, you have the following responsibilities:

1. Notify us or our agent as soon as it is reasonably possible. Failure to comply with this provision will result in denial of the claim. Notice to us will be considered notice to the agent and vice versa. If the *loss* is the result of a crime, notify the police immediately.

2. Take all reasonable steps to protect the Covered Property from further damage by a covered cause of *loss*. We will pay reasonable expenses you incur for repairs, and our proportionate share of other reasonable expenses you incur, in order to prevent further damage by a covered cause of *loss*.

3. Separate the damaged from the undamaged property to the extent that this is possible. Then provide a complete inventory of the damaged and the undamaged property. The inventory should include the original cost of the property, its replacement cost, and the amount of *loss* you are claiming. However, if the total claim for any *loss* is less than $10,000, you are not required to provide any inventory of the undamaged property.

4. Give us a signed and sworn proof of *loss* that states:
   a. The time and origin of the *loss*;
   b. The interest you and anyone else have in the property;
   c. The replacement cost of each item or the actual cash value, whichever is applicable, and the amount of *loss* it suffered;
   d. Any other insurance on the property; whether valid or not;
   e. Any legal rights of others to the property.

5. You must also give us a copy of the descriptions and schedules in all policies of the Covered Property that was destroyed or damaged. And you must exhibit to us or any person we designate whatever remains of the property.

6. You must provide us with the proof of *loss* and any other required documents within 60 days of the *loss* unless we give written permission to extend this period. You must also permit us to examine and copy any of your books and records at any reasonable time and place that we choose. And you, your employees and your agents must, if we require you to, submit to examination under oath and sign a copy of this examination.

JSA0025

**LOSS CONDITIONS**
(Cont.)

**D. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same *loss*, we will not pay more than the actual amount of the *loss*, or the Limit of Insurance applicable to the most specific coverage, whichever is less.

**E. *LOSS* PAYMENT**

We will pay within 30 days after:
1. We reach an agreement with you or the owner of the property; or
2. The entry of a final court judgment; or
3. The filing of an appraisal award.

**F. OTHER INSURANCE**

If a covered *loss* is also covered under other insurance available to you, we won't pay for any *loss* until the other insurance is used up. However, if the other insurance is purchased specifically to apply in excess of the coverage limits of this policy, we will pay for a covered *loss* under this policy.

**G. OUR OPTIONS AFTER A *LOSS***

If you have a *loss*, we can:
1. Take all or part of the property at its agreed or appraised value; or
2. Pay for the *loss* in cash; or
3. Repair, rebuild, or replace the destroyed or damaged property with other property of like kind and quality within a reasonable time. We will tell you our intentions to do so within 30 days after receiving your proof of *loss*; or
4. Make any adjustments or payments to others if they own the property that was destroyed or damaged.

**H. PAIRS, SETS OR PARTS**

1. Pairs or Sets

The *loss* of an article which is part of a set will not be considered a *loss* of the entire set. Therefore, if there is a *loss* to Covered Property which is part of a set, we will pay a fair portion of the total value of the set.

2. Parts.

If *loss* is to a part of Covered Property that consists of several parts, we will pay for only the lost or damaged part.

**I. RECOVERIES**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the *loss* amount will be adjusted accordingly based upon the amount you received for the recovered property.

If we have already paid you the *loss* amount at the time of any salvage or recovery, the amount you receive for the recovered property will accrue entirely to our benefit until you have paid any amounts owed to us as a result of the adjustment to the *loss* amount.

**J. PRIVILEGE TO ADJUST WITH OWNER**

In the event of a covered *loss*, at our option, we may settle the *loss* with the owner of the property. A release from the owner of the property will satisfy any claim of yours. We are not obligated to provide a defense for legal proceedings brought against you. However, if we elect to do so, the expense of this defense will be at our cost.

Form BB-SW64L (7343)
Page 3 of 6

JSA0026

**LOSS CONDITIONS**
**(Cont.)**

**K.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If we pay a claim under this policy, we are assigned, to the extent of our payment, your related rights of recovery against all other liable people and/or entities.  You have an obligation to fully cooperate with us in enforcing these assigned rights.  You may not waive these rights you assign to us after the *loss* occurs. You agree to sign any papers, deliver them to us, and do anything else that is necessary to help us exercise our rights.

You have a limited right to waive your rights against another party before the *loss* occurs.  With the exception of the liability of Architects and Engineers for professional errors and omissions, and the liability of manufacturers, suppliers and sellers of goods for product liability, defects in design and manufacture, warrantees and guarantees, you may otherwise waive your rights against another party in writing prior to *loss* to Covered Property.

Waivers pre-*loss* that are in accordance with these terms will not restrict or limit your insurance

Form BB-1W644  (3/05)
Page 6 of 6

JSA0027



# ACE Common Policy Conditions

These are Conditions which apply to the entire policy, including any endorsements. However, endorsements can also change these Conditions, so be sure to check any endorsements you have.

**GENERAL CONDITIONS**

### A. CANCELLATION

1. You may cancel this insurance by sending to us or our authorized representative advance written notice of the date cancellation is to take effect.
2. We may cancel this insurance by sending you notice. The notice will state the effective date of cancellation which ends the policy period. We will mail or deliver the notice of cancellation. If mailed, proof of mailing will be sufficient proof of notice. In either case, we will send the notice to your last mailing address known by us.
3. If we cancel for nonpayment of premium, we will send you at least 15 days notice. If we cancel for any other reason, we will send you at least 45 days notice.
4. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

### B. CHANGES

Notice to any of our agents or knowledge possessed by any such agent will not:
1. change any part of this policy;
2. remove any provisions from the policy; or
3. keep us from enforcing any of the rights this policy gives us.

There is only one way to change the terms of this policy: by including a written endorsement issued by us to form a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We can also, at any reasonable time, examine and audit your books and records for anything we believe might relate to this insurance. We have the right to examine and audit your books and records for three years after your policy expires.

### D. INSPECTIONS AND SURVEYS

While this policy is in effect, we can, at any reasonable time, inspect your business property and operations. If we do, however, neither our inspection nor any report of it can serve as a representation that your property or operations are safe or that they comply with any law, rule or regulation.

### E. PREMIUMS

You agree to pay the premium shown in the Declarations on the first day this policy takes effect. If you are paying the premium in installments, you agree to pay the first installment on this day and the remainder of the installments when they are due.

### F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

You agree not to transfer any legal rights or interest you have in this policy without our prior written consent. However, if you are an individual and you die, we will provide the following coverage:
1. We will cover your legal representative who is performing his or her duties as representative, against any claims for *loss* covered under this policy.
2. We will cover any person who has temporary legal custody of your property, but only until a qualified legal representative is appointed.

Page 1 of 1
Form ACR0123 (OMCS)

# ELECTRONIC DATA AMENDMENT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Patel Hoehne, LLC, et al | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| IMC | I20666602 001 | 04/21/2006 to 04/21/2007 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

Insert this policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART**

A. When this endorsement is attached to the Standard Property Policy the term Coverage Part in this endorsement is replaced by the term Policy.

B. This endorsement replaces and supersedes any and all contrary policy provisions. This policy does not insure against loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

1. "Electronic Data" by any cause whatsoever (including but not limited to "Computer Virus"); and/or

2. "Electronic Media" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data";

regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data" or "Electronic Media".

This exclusion does not apply to loss or damage to "Electronic Data" or "Electronic Media" caused by or resulting from the Perils of Fire; Lightning; Explosion; Windstorm or Hail; Smoke; Aircraft or Vehicles; Riot and Civil Commotion; Willful or malicious physical loss or damage by a means other than computer virus; Leakage from fire extinguishing equipment; Sinkhole collapse; Falling Objects; Weight of snow, ice or sleet; Water Damage; Building glass breakage; Sonic Boom; Flood; Earth Movement or Volcanic Action, if and to the extent such Perils are already covered by this or by any underlying policy.

C. As respects the Commercial Property Coverage Part, the Valuation Loss Condition is replaced by the following with respect to "Electronic Media" or "Electronic Data":

"Electronic Media" or "Electronic Data" shall be valued at the cost of the blank media plus the costs of copying or restoring "Electronic Data" from back-up or from originals of a previous generation, and including all reasonable and necessary amounts, not to exceed $2,500 any one occurrence, incurred in recreating, gathering and assembling such "Electronic Data".

ALL-10763 (10/01)                                              Page 1 of 2

JSA0029

This Policy does not insure any amount pertaining to the value of such "Electronic Data" to the insured or any other party, even if such "Electronic Data" cannot be recreated, gathered or assembled. If not repaired, replaced or restored, "Electronic Media" shall be valued at the cost of the blank media.

D.  As respects the Commercial Inland Marine Coverage Part, the Valuation General Condition is replaced by the following with respect to "Electronic Media" or "Electronic Data":

'Electronic Media" or "Electronic Data" shall be valued at the cost of the blank media plus the costs of copying or restoring "Electronic Data" from back-up or from originals of a previous generation, not including research and engineering or the costs or expense of recreating, gathering or assembling such "Electronic Data".

This Policy does not insure any amount pertaining to the value of such "Electronic Data" to the insured or any other party, even if such "Electronic Data" cannot be recreated, gathered or assembled. If not repaired, replaced or restored, "Electronic Media" shall be valued at the cost of the blank media.

E.  Definitions

1.  "Electronic Data" means facts, concepts, information or data, including compilations thereof, in a form useable or intended for use or processing by "Computers" or for storage on "Electronic Media". "Electronic Data" includes but is not limited to files, programs, applications, operating systems, and other coded instructions for the processing, calculation and storage of facts, concepts and information by "Computers".

2.  "Electronic Media" means any physical device that holds, stores, contains or transfers "Electronic Data", and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

3.  "Computers" includes but is not limited to mainframes, servers, workstations and portable "Computers", personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

4.  "Computer Virus" means instructions, code, applications or any software program that has the ability to damage, destroy, erase, corrupt, alter, or prevent access to "Electronic Data", "Electronic Media" or "Computers" or to disrupt or interfere with the operations of "Computers".

Authorised Agent

JSA0030

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL EXCLUSION - FUNGUS, WET ROT, DRY ROT AND BACTERIA

A. The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss:

"Fungus", Wet Rot, Dry Rot and Bacteria - Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus" wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet or dry rot or bacteria results from fire or lightning.

Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

B. The following is added to the Definitions

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other terms and conditions remain unchanged.        Authorized Representative

ACE3204 (07-02)

JSA0031

18/29/2006  15:37  7027363672          MAHONEY-LV                          PAGE  29/35

# Terrorism Exclusion Endorsement

**General Policy Information**

| | |
|---|---|
| Named Insured: | Patal Hoehne, LLC, et al |
| Endorsement Number: | |
| Policy Symbol: | IMC |
| Policy Number: | 120666602 001 |
| Policy Period: | 04/21/2006 to 04/21/2007 |
| Effective date of Endorsement: | |
| Issued by:<br>(Name of Insurance Company) | Westchester Surplus Lines Insurance Company |

This Endorsement changes the policy – Please read it carefully
This endorsement changes your policy as follows:

**Endorsement Information**

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Act of Terrorism"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism."

Page 1 of 2
Form ALL-10759 (10/6)



JSA0032

**Endorsement Information (Continued)**

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in sequence to the loss, injury, damage, expense, cost, or legal obligation.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

B.   As used in this endorsement:

"Act of Terrorism" means an activity that:

1.  Involves any violent act or any act dangerous to human life, tangible or intangible property, and that causes damage to property or injury to persons or causes a threat thereof; and

2.  Appears to be intended, in whole or in part, to:

a.  Intimidate or coerce a civilian population; or

b.  Disrupt any segment of a nation's economy; or

c.  Influence the policy of a government by intimidation or coercion; or

d.  Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

e.  Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

Authorized Agent



JSA0033



**ace usa**

Westchester Surplus Lines Insurance Company
_____
Insurance Company

120866602 001
_____
Policy Number

Patel Hoehne, LLC, et al
_____
Policy Holder

CRC INSURANCE SERVICES INC
_____
Broker/Producer

### POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act (the Act) you have the right to purchase insurance coverage for losses arising out of acts of terrorism. As defined in Section 102(1) of the Act: the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence or affect the conduct of the United States Government by coercion.

Responsibility for compensation under the Act is shared between insurance companies covered by the Act and the United States Government. Under the formula set forth in the Act, the United States Government pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage. The premium for the terrorism coverage defined in the Act set forth below does not include any charges for the portion of loss covered by the federal government under the Act.

You elected _NOT_ to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL _NOT_ PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

---

Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $ 540 , however you elected to decline such coverage.

---

Notice Form 5

TRIA15 (4/08)

JSA0034

# Service of Suit Endorsement

| | |
|---|---|
| **General Policy Information** | Named Insured:                    Patel Hoehne, LLC, et al |
| | Endorsement Number: |
| | Policy Symbol:                    IMC |
| | Policy Number:                    D20666602 001 |
| | Policy Period:                    04/21/2006 to 04/21/2007 |
| | Effective date of Endorsement: |
| | Issued by:                        Westchester Surplus Lines Insurance Company |
| | (Name of Insurance Company) |

**This Endorsement changes the policy – Please read it carefully**

**Endorsement Information**

Information about service of "suits" upon us is given below. Service of process of "suits" against us may be made upon the following person, or another person we may designate:

> Saverio Roosa, Assistant General Counsel
> ACE USA Companies
> P.O. Box 1000
> 436 Walnut Street, WA04K
> Philadelphia, PA  19106

The person named above is authorized and directed to accept service of process on our behalf in any action, "suit" or proceeding instituted against us.  If you request, we will give you a written promise that a general appearance will be entered on our behalf if a "suit" is brought.

If you request, we will submit to the jurisdiction of any court of competent jurisdiction. We will accept the final decision of that court or any Appellate Court in the event of an appeal.

The laws of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as our agent for service of process.

Page 1 of 2
Form BB-13320a (02/06)



JSA0035

18/20/2006   19:37   7827333672                MAHONEY-LV                          PAGE  33/35

**Endorsement Information**
(CONTINUED)

In those jurisdictions, we designate the Director of Insurance as our true and lawful attorney upon whom service of process on our behalf may be made. We also authorize the Director of Insurance to mail process received on our behalf to the company person named above.

If you are a resident of Canada, you may also serve "suit" upon us by serving the government official designated by the law of your province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

Authorized Representative

Page 2 of 2
Form BB-10920a (02/96)



JSA0036

# General Endorsement

**General Policy Information**

Named Insured: Patel Hoehne, LLC, et al

Policy Symbol:  IMC    Policy Number: I29066602 001

Endorsement Number:  A    Effective date of Endorsement:

Policy Period:  04/21/2006 to 04/21/2007

Issued by:    Westchester Surplus Lines Insurance Company
(Name of Insurance Company)

This Endorsement changes the policy – Please read it carefully
This endorsement modifies insurance provided under the following:

**Builders Risk Xtra**                                              COVERAGE FORM

**Endorsement Information**

The Named Insured reads as follows:

Patel Hoehne, LLC
dba Hoehne Contracting JSA Hospitality Group

Page 1 of 1
Form CC-3R19 (7/97)                Authorized Agent



JSA0037

# General Endorsement

**General Policy Information**

Named Insured: Patel Hoehne, LLC, et al

Policy Symbol:  IMC

Policy Number: I20666602 001

Endorsement Number: B

Effective date of Endorsement:

Policy Period: 04/21/2006 to 04/21/2007

Issued by:
(Name of Insurance Company)       Westchester Surplus Lines Insurance Company

**This Endorsement changes the policy – Please read it carefully**
This endorsement modifies insurance provided under the following:

**Builder Risk Xtra**                                    COVERAGE FORM

**Endorsement Information**

**PROTECTIVE SAFEGUARD MEASURES**
It is a condition precedent to coverage under this policy that when construction operations are not being performed that the job site location(s) covered by this policy shall be protected at all times by the protective safeguard measures checked below. Coverage as provided by this policy will be automatically suspended at the involved location(s) if you fail to maintain the safeguard measures. These protective measures will remain in full force and effect throughout the coverage period unless specifically waived or deleted in writing by us.

(X)   Job site will be protected with chain link fencing (or other similar security fencing) at least 6 feet in height completely enclosing the entire job site. Entrance and access gates shall be securely locked during non-working hours.

(X)   Job site will be fully illuminated each night with lights continuously from sunset to sunrise.

( )   Job site will be protected by at least one guard on job site premises during all non-working hours whose sole duty will be security of the named job site location(s) and who is equipped with a telephone for immediate use.

_____      _____
(Insured)                                               (Date)

_____      _____
(Authorized Company Representative)                    (Date)

Page 1 of 1
Form CC-3R15 (7/97)

Authorized Agent



JSA0038

03/14/2008                    DLSUSA/DIVERSIFIED                              PAGE1

**SUMMONS**
*(CITACION JUDICIAL)*

*handwritten: EJ Bth accepted personal service 4/4/08 3:40 pm*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
DIVISION

PM 3: 45

*...RIOR COURT*
SAN DIEGO COUNTY. CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WESTCHESTER SURPLUS LINES INSURANCE CO

*handwritten: DOES 1 through 200*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JSA HOSPITALITY GROUP, INC., a California Corporation

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SAN DIEGO SUPERIOR COURT - Central Division
330 W. Broadway
San Diego, CA 92101

CASE NUMBER: 37-2008-00080003-CU-IC-CTL
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter C. Ward, Esq. SBN 126459, Christopher H. Hagen, Esq. SBN 179529
WARD & HAGEN, LLP, 440 Stevens Ave. Suite 350, Solana Beach, CA 92075 (858) 847-0505 (858) 847-0105 Fax

| DATE:<br>*(Fecha)* | MAR 1 4 2008 | Clerk, by<br>*(Secretario)* | C. VAN PELT | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Westchester Surplus lines Insurance Co.

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

**RECEIVED**

APR 0 4 2008

ACE INCOMING LEGAL

03/14/2008                    DLSUSA/DIVERSIFIED                    PAGE1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Peter C. Ward, Esq. SBN 126459   Ralph W. Peters, Esq. SBN 126948 WARD & HAGEN, LLP 440 Stevens Avenue, Suite 350 Solana Beach, CA 92075 TELEPHONE NO: 858.847.0505     FAX NO: 858.847.0105 ATTORNEY FOR (Name): Plaintiffs | FILED CIVIL BUSINESS OFFICE-10 CENTRAL DIVISION 08 MAR 14 PM 3: 35 CLERK SUPERIOR COURT SAN DIEGO COUNTY, CA. |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central Division

CASE NAME:
JSA HOSPITALITY GROUP v.  WESTCHESTER SURPLUS

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded $25,000 or less) | ☐ Counter    ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 37-2008-00080003-CU-IC-CTL JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☑ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | Real Property | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | Enforcement of Judgment |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | Miscellaneous Civil Petition |
| ☐ Professional negligence (25) | Judicial Review | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| Employment | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties        d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence        f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☐ is  ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 13, 2008
Ralph W. Peters, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:      330 West Broadway
MAILING ADDRESS:     330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:         Central
TELEPHONE NUMBER: (619) 685-6082

PLAINTIFF(S) / PETITIONER(S):      JSA Hospitality Group, Inc.

DEFENDANT(S) / RESPONDENT(S):  Westchester Surplus Lines Insurance Co.

JSA HOSPITALITY GROUP, INC. VS. WESTCHESTER SURPLUS LINES INSURANCE CO.

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2008-00080003-CU-IC-CTL |
|---|---|

Judge: Yuri Hofmann                                    Department: C-60

COMPLAINT/PETITION FILED: 03/14/2008

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00080003-CU-IC-CTL        CASE TITLE: JSA Hospitality Group, Inc. vs. Westchester Surplus Lines In:

### NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It Is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM**: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participate in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines**: Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery**: Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation**: Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION**: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines**: Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system, including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

**PLAINTIFF(S):** JSA Hospitality Group, Inc.

**DEFENDANT(S):** Westchester Surplus Lines Insurance Co.

**SHORT TITLE:** JSA HOSPITALITY GROUP, INC. VS. WESTCHESTER SURPLUS LINES INSURANCE CO.

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2008-00080003-CU-IC-CTL |
|---|---|

Judge: Yuri Hofmann    Department: C-60

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program      ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation      ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial      ☐ Private Reference to General Referee

☐ Private Summary Jury Trial      ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral      ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____      Date: _____

_____      _____
Name of Plaintiff      Name of Defendant

_____      _____
Signature      Signature

_____      _____
Name of Plaintiff's Attorney      Name of Defendant's Attorney

_____      _____
Signature      Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 03/14/2008

_____
JUDGE OF THE SUPERIOR COURT

3

**Exhibit B**

SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE  Bar No. 102181
ROBERT BERG  Bar No. 99319
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY

FILED
CIVIL BUSINESS OFFICE 19
DIVISION

08 MAY -1  AM 11: 40

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO – CENTRAL DIVISION

FAXED

| | |
|---|---|
| JSA HOSPITALITY GROUP, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE CO., and DOES I through 200, inclusive,<br><br>        Defendants. | CASE NO. 37-2008-00080003-CU-IC-CTL<br><br>DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S ANSWER TO COMPLAINT |

COMES NOW defendant Westchester Surplus Lines Insurance Company ("Westchester") and, in answer to the unverified complaint of plaintiff JSA Hospitality Group, Inc. ("JSA") on file herein, denies each and every allegation in the complaint and further denies that JSA has suffered any damage in the sum or sums alleged, or in any sum or at all, or is otherwise entitled to any relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Westchester alleges that the complaint, and each and every purported cause of action therein, fails to state facts sufficient to constitute a cause of action against it.

### SECOND AFFIRMATIVE DEFENSE

Westchester alleges that the complaint, and each and every purported cause of action

COPY

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1 therein, fails to state a claim upon which relief can be granted.

2 THIRD AFFIRMATIVE DEFENSE

3 Westchester alleges that, to the extent that the complaint was not brought in good faith

4 pursuant to California Civil Code § 128.7 or Rule 11 of the Federal Rules of Civil Procedure,

5 Westchester is entitled to and will seek reasonable expenses, including attorneys' fees, incurred

6 in defending this action, and any verdict should be adjusted accordingly.

7 FOURTH AFFIRMATIVE DEFENSE

8 Westchester alleges that the causes of action attempted to be stated and set forth in the

9 complaint are barred by all applicable contract and statute of limitations provisions, and the

10 limitations as set forth in the policy.

11 FIFTH AFFIRMATIVE DEFENSE

12 The claims asserted in the complaint, and each and every purported cause of action

13 therein, are barred by virtue of JSA's failure to comply with conditions precedent in the policy,

14 including but not limited to those contained in ACE Inland Marine Policy Conditions, Form BB-

15 5W64a (03/05), General Condition (C), Legal Action Against Us, and Loss Conditions (B),

16 Appraisal.

17 SIXTH AFFIRMATIVE DEFENSE

18 To the extent that JSA has failed to mitigate, minimize, or avoid any damages it has

19 allegedly sustained, any recovery against Westchester must be reduced accordingly.

20 SEVENTH AFFIRMATIVE DEFENSE

21 JSA has not suffered any damages as the result of any actions taken by Westchester, and

22 JSA is thus barred from asserting in the complaint any of the causes of actions alleged therein.

23 EIGHTH AFFIRMATIVE DEFENSE

24 Westchester alleges that its coverage positions and applications were and are not

25 inherently unreasonable as a matter of law.

26 NINTH AFFIRMATIVE DEFENSE

27 JSA is not entitled to actual costs of repairs until the repairs have, in fact, actually been

28 incurred.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1505961v1

-2-

ANSWER TO COMPLAINT

## TENTH AFFIRMATIVE DEFENSE

The actual cost of repair cannot be measured by an estimate provided by the insured, and thus the actual cost of repair is an undetermined sum until there has been an actual repair.

## ELEVENTH AFFIRMATIVE DEFENSE

JSA is only entitled to repair or rebuilding costs as measured at the time of the loss.

## TWELFTH AFFIRMATIVE DEFENSE

The complaint, to the extent it seeks punitive or exemplary damages, violates Westchester's right to protection from excessive fines as provided in the Eighth Amendment to the United States Constitution and the Constitution of the State of California, violates Westchester's right to substantive due process and equal protection as provided in the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of California, and does not meet the test for allowing punitive damages as set forth by the United States Supreme Court in *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996), *State Farm Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1553 (2003), *Philip Morris USA v. Williams*, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007), and other cases, and therefore fails to state a cause of action supporting punitive or exemplary damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

JSA's claims against Westchester are barred and not payable in all or in part by reason of the terms, definitions, exclusions, and endorsements contained in the insurance policy at issue, which thus bars JSA's claim herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

JSA's claims against Westchester concerning breach of the implied covenant of good faith and fair dealing are barred pursuant to the "genuine dispute" doctrine precluding bad faith as a matter of law.

## FIFTEENTH AFFIRMATIVE DEFENSE

JSA cannot preclude the contractual right to an appraisal based on waiver or estoppel.

## SIXTEENTH AFFIRMATIVE DEFENSE

Westchester alleges that JSA has failed to set forth its claims with sufficient particularity

1    to permit Westchester to raise all appropriate defenses and, thus, Westchester reserves its right to

2    add additional affirmative defenses as a factual basis for these defenses becomes known.

3        WHEREFORE, defendant Westchester Surplus Lines Insurance Company prays for

4    judgment as follows:

5      1.    That plaintiff take nothing by reason of the complaint;

6      2.    That defendant Westchester be dismissed;

7      3.    That defendant Westchester be awarded costs of suit incurred herein; and

8      4.    For such other and further relief as this Court may deem just and proper.

9    DATED: May 1, 2008        SEDGWICK, DETERT, MORAN & ARNOLD LLP

10

11      By:_____

12        Bruce D. Celebrezze
       Attorneys for Defendant

13        WESTCHESTER SURPLUS LINES
       INSURANCE COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-4-

ANSWER TO COMPLAINT

*JSA Hospitality Group, Inc. v. Westchester Surplus Lines Insurance Co., et al.*
San Diego Superior Court Case No. 37-2008-00080003-CU-IC-CTL
(1560-024599)

1

## PROOF OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market
3  Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On May 1, 2008, I served the
within document(s):

4

**DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE**
5  **COMPANY'S ANSWER TO COMPLAINT**

6      ☐      FACSIMILE - by transmitting via facsimile the document(s) listed above to the
fax number(s) set forth on the attached Telecommunications Cover Page(s) on this
7             date before 5:00 p.m.

8      ☒      MAIL - by placing the document(s) listed above in a sealed envelope with postage
thereon fully prepaid, in the United States mail at San Francisco, California
9             addressed as set forth below.

10     ☐      PERSONAL SERVICE - by personally delivering the document(s) listed above to
the person(s) at the address(es) set forth below.

11     ☐      OVERNIGHT COURIER - by placing the document(s) listed above in a sealed
envelope with shipping prepaid, and depositing in a collection box for next day
12            delivery to the person(s) at the address(es) set forth below via OVERNITE
EXPRESS.

13  Peter C. Ward, Esq.                          Attorneys For Plaintiff,
Christopher H. Hagen, Esq.                   JSA HOSPITALITY GROUP, INC.
14  Ralph W. Peters, Esq.
WARD & HAGEN, LLP                            Tel: (858) 847-0505
15  440 Stevens Avenue, Suite 350               Fax: (858) 847-0105
Solana Beach, California 92075
16

17      I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
18  day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
19  meter date is more than one day after date of deposit for mailing in affidavit.

20      I declare under penalty of perjury under the laws of the State of California that the above
is true and correct. Executed on May 1, 2008, at San Francisco, California.
21

22                                    *Andrea Mackenzie*
23                                       Andrea Mackenzie

24

25

26

27

28

SF/1507026v2

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JSA Hospitality Group, Inc., a California corporation

### DEFENDANTS

Westchester Surplus Lines Insurance Company

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Georgia**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Peter C. Ward / Christopher H. Hagen / Ralph W. Peters
Ward & Hagen, LLP
440 Stevens Avenue, Suite 350
Solana Beach, California 92075
Tel: (858) 847-0505 / Fax: (858) 847-0105

Attorneys (If Known)
Bruce D. Celebrezze (Cal. Bar No. 102181)
Robert N. Berg (Cal. Bar No. 099319)
Sedgwick, Detert, Moran & Arnold LLP
One Market Plaza, Steuart Tower, 8th Floor
San Francisco, California 94105 (415)781-7900

**'08 CV 0797 JM BLM**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
#### PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

#### PERSONAL INJURY
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

#### PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus – Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sections 1332 and 1441.
Brief description of cause:
Diversity action for breach of insurance contract and separate claims.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND** $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
May 1, 2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 150420    AMOUNT $350 —    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

VB 05/01/08

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 150420    — MB

May 01, 2008
14:15:11

Civ Fil Non-Pris
USAO #.: 08CR0797 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC68608

Total—> $350.00

FROM: JSA HOSPITALITY GROUP VS
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY